AVNET, INC., Plaintiff,

v.

SCOPE INDUSTRIES and Meyer Luskin, Defendants.

No. 80 Civ. 4513.

United States District Court,
S. D. New York.

Nov. 7, 1980.

As Amended Nov. 25, 1980.

**1122**

Skadden, Arps, Slate, Meagher & Flom, New York City, for plaintiff; Michael W. Mitchell, Robert E. Zimet, James E. Lyons, Philip M. Cedar, Peter L. Zurkow, New York City, of counsel.

Cleary, Gottlieb, Steen & Hamilton, New York City, for defendants; Edmund H. Kerr, Edwin B. Mishkin, Judith Ripps, Thomas J. Moloney, Jonathan I. Blackman, Yaron Reich, New York City, of counsel.

LASKER, District Judge.

### I. The Facts

On October 15, 1979, after acquiring 5.4% of the outstanding shares of common stock of Avnet, Inc., Scope Industries filed a Schedule 13D with the Securities and Exchange Commission pursuant to section 13(d) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78m(d), and SEC Regulation 13D, 17 C.F.R. § 240.13d–1 et seq., which require the disclosure of specified information by an owner of at least 5% of a class of a corporation's outstanding stock. Scope amended its Schedule 13D on June 2, 1980 to reflect that it had increased its Avnet holdings to 6.42% of the outstanding common stock. In its amended Schedule 13D, Scope stated that it intended to seek representation on Avnet's board.

On August 6, 1980, Avnet filed its complaint in this action alleging (1) that Scope's Schedule 13D was materially false and misleading because it failed to disclose, inter alia, that Scope was an unregistered investment company in violation of the Investment Company Act of 1940, 15 U.S.C. §§ 80a–1 et seq., and the consequences of that status.[1] Scope has not registered as an investment company. It has not done so because it contends that it is in fact and law not an investment company. The complaint also alleges that Scope and its president

---

1. Avnet alleges that the amended Schedule 13D is false and misleading in addition to the failure to disclose that Scope is an unregistered investment company in that Scope falsely stated that it had " 'no present plans or proposals to alter the existing business operations of Avnet,' " when Scope actually planned to force Avnet "to divest itself of several of its major operat-

ing divisions and then to use the proceeds of such sales to distribute cash to Scope and to acquire other Avnet shares," and that Scope failed to disclose that it planned "to implement ... a proposal to require Avnet to repurchase many of its publicly traded shares." Complaint ' " 30(i)–(ii).

Meyer Luskin (collectively, Scope), have begun to solicit proxies without complying with section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and the SEC regulations promulgated thereunder, and that these actions violated section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b–5, 17 C.F.R. §§ 240.10b–5.

After Avnet commenced this action, Scope filed a second amendment to its Schedule 13D which reports the filing of the present complaint as follows:

"On July 25 ... Avnet commenced an action in the United States District Court, Southern District of New York, against Scope and Meyer Luskin by filing a complaint, a true copy of which is attached hereto.... In substance, the complaint asserts that defendants are now actively pursuing an unlawful plan to force Avnet to undertake a program of ill–conceived divestitures of major segments of its business and to use the proceeds of such divestitures to repurchase Avnet stock, thereby increasing defendant Scope's percentage ownership of Avnet. The complaint further asserts that defendants have begun an unlawful proxy solicitation in an effort to secure multiple representation on Avnet's board of directors in order to facilitate their divestiture program and exploit non–public inside information regarding Avnet not available to all other shareholders. The complaint alleges that defendants' public filings with the Securities and Exchange [*sic*] Commission, which are supposed to provide current information with regard to defendants and their purpose in acquiring Avnet shares and their plans with respect to the business of Avnet, remain deliberately false and misleading in failing to disclose that, as an unregistered investment company, defendant Scope is prohibited from engaging in interstate commerce and acquiring securities of public companies such as Avnet and in failing to disclose defendants' plan to cause Avnet to sell profitable businesses and assets. The complaint further alleges that defendants have failed to make the requisite filings required by the Securities and Exchange Commission by participants in election contests."

The amendment continues by stating that Scope intends to deny the material allegations of the complaint, including, *inter alia,* the claim that Scope is an investment company. The amendment further states that Scope intends to seek "multiple representation" on Avnet's board and to influence Avnet's policies in specified areas.

Avnet moves, based on its claim that Scope's Schedule 13D is false and misleading, for a preliminary injunction[2] restraining Scope from acquiring Avnet stock, "exercising any rights in respect of Avnet shares owned by Scope," using Avnet stock to control or affect Avnet management, and taking any action "in furtherance of any plan" to purchase Avnet stock or "to influence the affairs of Avnet," unless Scope files an amended Schedule 13D disclosing that it is an unregistered investment company and the impact of that status on its plans with respect to Avnet. Scope moves for judgment on the pleadings as to Avnet's Schedule 13D claim and for its claim of an alleged violation of section 10(b) and Rule 10b–5.[3]

---

**2.** Avnet's motion for a preliminary injunction is based solely on Scope's failure to disclose that it is an unregistered investment company and the alleged consequences of that status. Avnet does not urge as a basis for its application the claims as to the failure to disclose accurately Scope's plans with respect to Avnet, *see* footnote 1 *supra,* nor the alleged illegal proxy solicitation.

**3.** Scope does not move to dismiss the second claim which alleges illegal proxy solicitation because that claim raises factual issues not appropriately decided on a motion for judg-

ment on the pleadings. Memorandum In Support of Motion for Judgment on the Pleadings and A Stay of Discovery, p. 7, n.6. Scope also moves for a protective order staying discovery with respect to the allegations of violation of the Investment Company Act pending decision on its motion to dismiss that claim. Since that decision is rendered in this Memorandum, the motion for a protective order is denied as moot.

Scope also moves to consolidate a hearing on the motion for a preliminary injunction with a trial on the merits of the action pursuant to

## II. The Section 13(d) Claim

Scope moves to dismiss the claim that the failure to disclose Scope's alleged status as an unregistered investment company rendered its Schedule 13D false and misleading. It argues that the cause of action fails to state a claim upon which relief may be granted and that it has become mooted by the second amendment to the Schedule 13D which was filed after the commencement of this lawsuit and which is quoted at length above.

An investment company is defined by the statute as a company which owns investment securities constituting over 40% of its total assets, 15 U.S.C. § 80a–3(a)(3), or as one which is "engaged primarily . . . in the business of investing, reinvesting, or trading in securities," 15 U.S.C. § 80a–3(a)(1).[4] Avnet claims that Scope is an investment company because it owns investment securities which allegedly constitute 61.5% of its total assets, and because it is in the business of owning or holding securities. Scope's alleged status as an investment company, according to Avnet, prohibits Scope from (1) purchasing additional Avnet shares, (2) actively seeking representation on Avnet's board of directors, (3) influencing policy decisions of Avnet's board, (4) soliciting proxies, and (5) attempting to form a group of Avnet shareholders, all of which Scope states in its Schedule 13D that it intends to do. Avnet argues that for those statements not to be false and misleading Scope must disclose that it is an unregistered investment company, which, as a matter of law is prohibited from taking those actions.

Scope answers that Avnet's claim has become moot because the second amendment to its Schedule 13D informs the reader of Avnet's claim that Scope is an unregistered investment company, and the consequences which flow from that status. Avnet responds that the amended disclosure is insufficient, since in that amendment Scope denies the allegation that it is an investment company. According to Avnet, accurate disclosure requires nothing short of a statement that Scope is *in fact* in violation of the Investment Company Act.

 We agree with Scope that the second amendment is sufficient to cure any alleged omissions in its earlier Schedule 13D and that accordingly, Avnet's first claim is now moot. As indicated above, the Investment Company Act defines an investment company as one which owns investment securities constituting over 40% of its total assets, or is "engaged primarily . . . in the business of investing, reinvesting, or trading in securities." 15 U.S.C. §§ 80a–3(a)(3), 80a–3(a)(1). Avnet contends that both because the book value of Scope's respective assets brings Scope within the first definition, and because Scope is in the business of owning or holding securities, it is an investment company. Scope denies that it is an investment company under either definition. As to the ownership of investment securities, Scope denies that the book value is the proper criterion of determination. It asserts that fair market value is the correct standard and that, so valued, less than 40% of its assets are investment securities, and that it is an operating company, with the result that it does not qualify as an investment company. In sum, Scope argues that it has continued to be an operating company even after the recent liquidation of some of its operating assets. Thus, serious questions exist as to whether Scope is an investment company, and until a competent determination is made on that issue, it cannot be stated with certainty that Scope is an investment company.

In *Copperweld Corporation v. Imetal*, 403 F.Supp. 579, 606 (W.D.Pa.1975), the tender offeror, Imetal, disclosed in its offer the

---

Fed.R.Civ.Pr. 65(a)(2). Since the claim which forms the basis of the motion for a preliminary injunction is dismissed, the motion to consolidate is also moot.

4. The statute also defines an investment company as one which

"is engaged or proposes to engage in the business of issuing face–amount certificates of the installment type, or has been engaged in such business and has any such certificate outstanding;"

15 U.S.C. § 80a–3(a)(2). Avnet does not claim that this subsection applies to Scope.

possibility that antitrust violations might result if its offer were successful. Copperweld argued that "Imetal should have described the nature and seriousness of the antitrust implications in its tender offer," and "admitt[ed] its guilt." The court held that under the circumstances of that case, "only the *possibility* of an antitrust violation need be disclosed" (emphasis in original).

■ Similarly, in *Ronson Corporation v. Liquifin Aktiengesellschaft*, 370 F.Supp. 597, 608 (D.N.J.), *aff'd per curiam*, 497 F.2d 394 (3d Cir.), *cert. denied*, 419 U.S. 870, 95 S.Ct. 129, 42 L.Ed.2d 108 (1974), also involving a tender offer battle, the offeror's 14D statement described the plaintiff's claims against it and the conflicting opinions of counsel for each side on those points. The court held this to be sufficient and indeed refused to rule on the questions by which the dispute was determinable.

"It should be obvious that this Court need not decide points of Italian or Swiss law, but only whether these foreign legal questions have been fully and fairly called to the attention of the [target] shareholders."

We find the rationale of *Copperweld* and *Ronson* persuasive.[5] As in those cases, so here, a genuine and vigorous dispute exists as to whether the material which the plaintiff alleges is required to be disclosed is actually a fact. In those cases, the defendants were not required to state in their schedules that the alleged facts were actually true. Instead, disclosure of the possibility of the alleged fact, and the conflicting positions taken by the parties was held to be sufficient. As one commentator stated,

"It should be noted that the *Ronson* and *General Host* cases did not require the offerors actually to resolve the opposing arguments about the applicability of governmental controls. Instead, the courts simply required that the offerors fully disclose the issues, allowing shareholders to draw their own conclusions concerning the probable impact of the controls upon the offeror and the target."

E. Aranow, H. Einhorn & G. Berlstein, Developments in Tender Offers for Corporate Control 78 (1977).

As stated in an analogous context,

"The only regulatory objective is that access to material information be enjoyed equally, but this objective requires nothing more than the disclosure of basic facts so that outsiders [read here investors] may draw upon their own evaluative expertise in reaching their own investment decisions with knowledge equal to that of the [discloser]."

*Securities and Exchange Commission v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 849 (2d Cir. 1968), *cert. denied*, 394 U.S. 976, 89 S.Ct. 1454, 22 L.Ed.2d 756 (1969). In sum, the purpose of the disclosure provisions of the securities laws is to see to it that the insider, management official, proxy solicitor, tender offeror or substantial shareholder, as the case may be, discloses to the investor the facts as truly believed by the discloser. When, as here, the record demonstrates that there is a dispute as to the facts, the law requires only that the disputed facts and the possible outcomes be disclosed. This is the limit of the law unless there is reason to believe that the facts are not genuinely in dispute. In the case at

---

5. Scope cites *General Host Corp. v. Triumph American, Inc.*, 359 F.Supp. 749, 758 (S.D.N.Y. 1973) which involved the sufficiency *vel non* of another 14D statement. There, if the proposed tender offer were consummated, two English statutes would become applicable to Host, the target corporation. However, the likelihood of enforcement of those statutes adversely to Host was agreed to be uncertain. The court held that disclosure of existence of these laws "*and* a factually based opinion as to the probability or lack of probability of adverse conse-

quences" was sufficient to meet the disclosure requirements (emphasis in original).

It is true that *Host* is distinguishable from the case at hand, since in *Host* it was not disputed that enforcement of the statutes in question was uncertain. Consequently, the *Host* court's holding that only the *probability* of enforcement consequences need to have been disclosed does not address the issue raised here, since Avnet contends that Scope is *in fact* an unregistered investment company.

hand, there is no reason to believe that they are not genuinely in dispute.[6]

As noted earlier, the only certain factual statement that can be made at this time as to Scope's status is that there is a possibility that it is an unregistered investment company (and the consequences of that status). By disclosing Avnet's allegations, in its amended Schedule 13D, Scope sufficiently informs Avnet's shareholders of that possibility and of the parties' positions on that point.

A ruling that section 13D requires Scope to state that it is *in fact* an unregistered investment company, would call upon it to state that fact with greater certainty than would be required if, for example, the SEC had filed an action alleging Scope's violation of the Investment Company Act which was *sub judice* at the time. In such a situation, Scope would be required only to disclose that the allegations had been made, but not that those allegations were in fact true. *See Missouri Portland Cement Company v. Cargill, Incorporated*, 498 F.2d 851, 873 (2d Cir.), *cert. denied*, 419 U.S. 883, 95 S.Ct. 150, 42 L.Ed.2d 123 (1974).[7] There appears to be no basis for requiring more when a private party initiates suit. Moreover, a statement that Scope is in fact an unregistered investment company may actually render the Schedule 13D false, since Scope alleges that it does not consider itself to be an investment company, and it would be misleading for it to file a statement the contents of which it does not, in truth, believe.[8]

■ Accordingly, the claim for failure to disclose Scope's alleged investment company status is dismissed because Scope's amended 13D statement is sufficient.[9]

---

**6.** Avnet has made no showing or offer of proof that Scope and Luskin do not in good faith believe that Scope is an operating company. Avnet suggests that the proper method of disposing of a case such as this in which the defendant disputes that the "facts" which the plaintiff alleges should be disclosed are actual facts is for the court to try the issue. We disagree that such a method is required by the statute or appropriate in the posture of this case.

**7.** The court stated:

"Of course, if the FTC should issue a complaint with respect to Cargill's acquisition of MP, as we are told its staff has recommended, a renewed tender offer should disclose that fact, with whatever reasonable comments Cargill may choose to make about it."

498 F.2d at 873.

**8.** The parties are agreed that Avnet has no standing to sue Scope for violation of the Investment Company Act, a statute which the courts have held confers standing only on stockholders of the investment company. *See Herpich v. Wallace*, 430 F.2d 792, 813–17 (5th Cir. 1970); *Securities and Exchange Comm'n v. General Time Corp.*, 407 F.2d 65, 71 (2d Cir. 1968), *cert. denied*, 393 U.S. 1026, 89 S.Ct. 637, 21 L.Ed.2d 570 (1969); *Greater Iowa Corp. v. McLendon*, 378 F.2d 783, 793–94 (8th Cir. 1967); *Goodall v. Columbia Ventures, Inc.*, 374 F.Supp. 1324 (S.D.N.Y.1974). Scope argues that Avnet's complaint as to the 13D statement is a backdoor attempt to secure the relief which Avnet is barred from securing under the Investment Company Act. We need not decide this question since we have determined that Scope's amended 13D statement is sufficient. However, we note that the fact that a plaintiff may not have standing to sue under one statute does not compel the conclusion that it cannot litigate the same issue under another.

**9.** Scope contends that even if Scope were an unregistered investment company, that information is not the "sort of information" required to be disclosed on a Schedule 13D. They rely on *General Time Corp. v. Talley Industries, Inc.*, 403 F.2d 159 (2d Cir. 1968), *cert. denied*, 393 U.S. 1026, 89 S.Ct. 631, 21 L.Ed.2d 570 (1969), for its "closely analogous reasoning" to support this contention. However, that case bears only limited precedential value here. In *General Time*, the court held that the failure by Talley to disclose, in its proxy statement directed to the shareholders of General Time, that the SEC had found that it violated section 17(d) of the Investment Company Act by entering a joint arrangement with an investment fund without securing prior SEC approval did not violate the proxy solicitation laws and regulations because that fact was not material to the General Time shareholders. The court reasoned that "it is hard to see what interest [General Time's] stockholders would have had in [Talley Industries'] violation of a statute designed to protect the stockholders of [the investment fund]." *Id.* at 163. As can be seen, the *General Time* decision is addressed to the issue of materiality and does not concentrate on the nature of the information required in a Schedule 13D. Certainly, if the alleged omissions here were material, *General Time* would not shield Scope.

*III. Preliminary Injunction*

Since the claim on which it is based is dismissed, the motion for a preliminary injunction is denied.

Moreover, even if the claim were not dismissed, Avnet has not made the showing required to prevail on its motion for a preliminary injunction. To be entitled to that relief, Avnet must demonstrate "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Jackson Dairy, Inc. v. H. P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979). Avnet has npt demonstrated that it is likely to succeed on the merits. One element of its claim that the Schedule 13D is false and misleading is that the omissions are material to Avnet shareholders. We have substantial doubt that they are. The parties agree that the applicable definition of materiality is set forth by the Supreme Court in *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976), a proxy disclosure case:

> "What the standard does contemplate is a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder. Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as

having significantly altered the 'total mix' of information made available."

*Id.* at 449; *see Transcon Lines v. A. G. Becker, Inc.*, 470 F.Supp. 356, 376 (S.D.N.Y. 1979) (*TSC* materiality standard applicable to Schedule 13D context). Avnet argues that under various provisions of the Act [10] the sale of securities to .an unregistered investment company is void. If this were true, an Avnet shareholder considering whether to sell stock to Scope would presumably want to know that the sale might later be declared void.

However, we disagree with Avnet that such sales are automatically void. While the issue has been addressed in only one case brought to our attention, the view there expressed is that such transactions are not void, but merely voidable. *See Mathers Fund, Inc. v. Colwell Company*, 564 F.2d 780, 783–84 (7th Cir. 1977). Since the purpose of the statute in such an instance is to prevent an unregistered investment company from transacting certain types of business, it makes sense that its illicit acts should be voidable against the unregistered company. However if the sales were automatically void, the innocent seller would be penalized as much as (and possibly more than) the investment company which violated the statute.

■■ Consequently, if Scope is an unregistered investment company, then, at most, sales of Avnet stock to Scope may be subject to rescission, and then presumably at the option of the sellers. The knowledge that sale of stock to Scope might be rescind-

---

Scope and Luskin also rely on *Nachman Corp. v. Halfred Inc.* [1973–1974 Transfer Binder] Fed.Sec.L.Rep. (CCH) ⸿ 94,455 (N.D.Ill.1973) and *D–Z Investment Co. v. Holloway*, [1974–1975 Transfer Binder] Fed.Sec.L.Rep. (CCH) ⸿ 94,771 (S.D.N.Y.1974), for the proposition that Section 13(d) does not require the disclosure of Investment Company Act violations. Although in each case the court rejected allegations that a Schedule 13D was false and misleading because of the omission of a violation of the Investment Company Act, neither opinion addressed the points raised by Avnet here that such disclosure is necessary to make statements in the Schedule 13D not false or misleading.

Finally, Scope and Luskin argue that Section 13(d) requires disclosure of specified information only, and unlike the case of a Schedule 14D–1 which is required to be filed in the tender offer context, does not require disclosure of every material fact. *See* 17 C.F.R. § 240.14d–100 (Item 10(f)). However, SEC Rule 12b–20, 17 C.F.R. § 240.12b–20, requires the disclosure of "material information ... necessary to make the required statements, in light of the circumstances under which they are made not misleading," and that rule applies to Schedule 13D by virtue of Rule 12b–1, 17 C.F.R. § 240.12b–1.

**10.** Sections 7(a)(4), 7(a)(1), 7(a)(2), 42(e), 47(b) of the Investment Company Act.

able is not likely to be viewed by a reasonable shareholder "as having significantly altered the 'total mix' of information ... available," at least not adversely. Accordingly, Avnet has not established that the omissions are material to its shareholders.

Moreover, since it has not been established that the omissions are material, it follows that Avnet shareholders are not being harmed, much less irreparably by the omissions.

Finally, even if Avnet has raised sufficiently serious questions going to the merits to make them fair ground for litigation, it has not established that the balance of hardships tips decidedly in its favor. Assuming that Avnet is correct that the sale of stock to an unregistered investment company is automatically void, a proposition with which we disagree above, Avnet has nevertheless not established that its shareholders who sell to Scope do not have an adequate remedy at law, or that Scope is unable to meet any damage claim.

### IV. Rule 10b–5

Scope moves to dismiss Avnet's third cause of action which alleges that, based on the facts stated in the first two claims, it also violated Rule 10b–5. Scope contends that Avnet lacks standing to sue under Rule 10b–5 because it is neither a purchaser or seller of securities in this case. Avnet argues that although it is not a purchaser or seller, it nevertheless has standing to press its claim that as a result of Scope's actions, "the market for Avnet common stock is being manipulated" (Complaint ¶ 41(iv)).

In *GAF Corporation v. Milstein*, 453 F.2d 709 (2d Cir. 1971), *cert. denied*, 406 U.S. 910, 92 S.Ct. 1610, 31 L.Ed.2d 821 (1972), the court held that an issuer lacked standing under Rule 10b–5 because it was not a purchaser or seller of securities. However, the court also recognized that there may be circumstances in which an issuer may have standing to sue under Rule 10b–5:

"We do not forclose the possibility, for example, that an issuer might have standing under 10b–5 to seek injunctive relief in circumstances where, despite the absence of a purchase or sale, it has suffered or will suffer direct injury because of the alleged fraud, or where it would be the most appropriate party to assert 10b–5 violations affecting all of its shareholders. The issuer, for example, may have standing to enjoin a manipulative scheme which had the effect of depressing the price of the issuer's stock immediately prior to a contemplated issue of securities, or it may have standing to enjoin a fraud whose purpose was to inflate the market value of the stock of a company with which the issuer was negotiating a merger. Moreover, there may be additional situations under which the standing of the issuer under 10b–5 will have to be appraised anew."

*Id.* at 722 n.27.

Avnet properly cites *GAF* as setting forth the standard which a non–selling or buying plaintiff must satisfy to establish standing to sue under Rule 10b–5. Avnet argues that this standard is satisfied by its allegation that the market price is being manipulated.

■ However, since a claim for violation of Rule 10b–5 alleges fraud, the circumstances constituting the fraud must be plead with particularity. Fed.R.Civ.P. 9(b). Avnet's complaint simply fails to state with any particularity whatsoever the incidents constituting the alleged manipulation. Indeed, the text of the 10b–5 claim gives every indication of having been added to the complaint as an afterthought.

Accordingly, the motion to dismiss the third claim will be granted unless Avnet amends its complaint within twenty days to allege with requisite particularity facts constituting the alleged fraud.

Moreover, there is serious doubt whether Avnet's present complaint alleges facts sufficient to invoke successfully the *GAF* exception to the bar on issuer standing. The complaint alleges market manipulation, but does not specify how that manipulation injured Avnet, why or how Avnet may be the best champion of its shareholders' rights here, or any other reason to allow it to sue under Rule 10b–5 here.

\*　　\*　　\*　　\*　　\*　　\*

Scope's motion to dismiss that part of the first claim alleging failure to disclose violation of the Investment Company Act is granted; Scope's motion to dismiss the third claim will be granted in twenty days unless the complaint is amended as indicated; Avnet's motion for a preliminary injunction is denied.

It is so ordered.