23-1141-cv
*Nano Dimension Ltd. v. Murchinson Ltd.*

# United States Court of Appeals
# for the Second Circuit

_____

August Term 2023

(Argued:  May 14, 2024        Decided: May 20, 2024)

No. 23-1141-cv

_____

Nano Dimension Ltd.,

*Plaintiff-Appellant,*

v.

Murchinson Ltd., EOM Management LTD, Nomis Bay Ltd., BPY Limited,
Boothbay Fund Management, LLC, Boothbay Absolute Return Strategies, LP,
Boothbay Diversified Alpha Master Fund, LP, Anson Advisors Inc., Anson
Funds Management LP, Anson Management GP LLC,

*Defendants-Appellees.*

_____

Before:        BIANCO, NARDINI, and KAHN, *Circuit Judges*.

In this appeal, Nano Dimension Ltd. ("Nano") challenges the district court's dismissal of its claims alleging violations of Section 13(d) of the Securities Exchange Act of 1934, 15 U.S.C. § 78m(d).  We conclude that the district court properly dismissed Nano's claims as moot because the alleged Section 13(d) violations were cured while this case was pending before the district court, and there is no basis for injunctive relief.  Accordingly, we **AFFIRM** the judgment of the district court.

MELISSA R. GINSBERG (Jonathan G. Kortmansky, *on the brief*), BraunHagey & Borden LLP, New York, New York *for* Plaintiff-Appellant.

MICHAEL E. SWARTZ (Randall T. Adams, Mark L. Garibyan, and Erika L. Simonson, *on the brief*), Schulte Roth & Zabel LLP, New York, New York *for* Defendants-Appellees Anson Advisors Inc., Anson Funds Management LP, and Anson Management GP LLC.

Thomas J. Fleming (Adrienne M. Ward and Sahand Farahati, *on the brief*), Olshan Frome Wolosky LLP, New York, New York, *for* Defendants-Appellees Murchinson Ltd., EOM Management LTD, Nomis Bay Ltd., and BPY Limited.

PER CURIAM:

Plaintiff-Appellant Nano Dimension Ltd. ("Nano") appeals from the judgment of the United States District Court for the Southern District of New York (Jennifer Louise Rochon, *Judge*) dismissing as moot its securities claims against Defendants-Appellees Murchinson Ltd., EOM Management LTD, Nomis Bay Ltd., and BPY Limited (collectively, "Murchinson"), and Anson Advisors Inc., Anson Funds Management LP, and Anson Management GP LLC (collectively, "Anson" and together with Murchinson, "Defendants"). Nano alleged violations of Section 13(d) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78m(d). We conclude that the district court properly dismissed Nano's claims as moot because the alleged Section 13(d) violations were cured while this case was

pending before the district court, and there is no basis for injunctive relief. Accordingly, we **AFFIRM** the judgment of the district court.

## BACKGROUND

In the operative amended complaint, Nano, an Israeli 3D printing and manufacturing company that trades on the NASDAQ stock exchange, alleged that Defendants failed to disclose that they acted as a group when acquiring more than five percent of Nano's American Depository Shares ("ADSs"), in violation of Section 13(d) of the Exchange Act, 15 U.S.C. § 78m(d).[1] As relief, Nano sought an order directing Defendants to disclose their alleged group status on amended Schedule 13Ds,[2] and an injunction prohibiting Defendants from acquiring additional ADSs or voting their existing ADSs pending completion of the amended filings. In response to Nano's lawsuit, Defendants amended their Schedule 13D filings, appending Nano's complaint and stating that the allegations therein were without merit.[3] The district court subsequently dismissed Nano's

---

[1] Nano also asserted claims for breach of contract, tortious interference, and unjust enrichment but has abandoned those claims on appeal.

[2] A Schedule 13D is the filing required under Section 13(d). *See* 17 C.F.R. § 240.13d-1.

[3] Murchinson and Anson disclosed that they had separately acquired 5.1% of Nano's ADSs in Schedule 13Ds filed on January 23, 2023 and March 9, 2023, respectively. Defendants then amended their Schedule 13D filings to disclose Nano's initial complaint, which was filed on March 27, 2023, as well as its amended complaint, which was filed on June 22, 2023.

Section 13(d) claims with prejudice, concluding that they were moot in light of Defendants' amended filings. On appeal, Nano challenges the district court's dismissal of its claims, arguing that: (1) Defendants' amended filings did not satisfy Section 13(d)'s disclosure requirements; and (2) even if they did, Nano is entitled to retroactive injunctive relief.

## DISCUSSION

We review *de novo* the district court's determination that Nano's Section 13(d) claims were moot and its decision to dismiss those claims pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Lowinger v. Morgan Stanley & Co. LLC*, 841 F.3d 122, 129 (2d Cir. 2016); *Cnty. of Suffolk, N.Y. v. Sebelius*, 605 F.3d 135, 139 (2d Cir. 2010).

Section 13(d), which was added to the Exchange Act by the Williams Act, Pub. L. No. 90-439, 82 Stat. 454 (1968), requires any group acquiring beneficial ownership of more than five percent of an issuer's equity securities to file with the Securities and Exchange Commission ("SEC") a Schedule 13D disclosing, *inter alia*, the members of the group.[4]  *See* 15 U.S.C. § 78m(d)(1), (3); 17 C.F.R. § 240.13d-101

---

[4] SEC Rule 13d-5 defines a group acquiring beneficial ownership as "two or more persons agree[ing] to act together for the purpose of acquiring, holding, voting or disposing of equity securities of an issuer[.]"  17 C.F.R. § 240.13d-5(b)(1)(i).

4

(Schedule 13D); *accord Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 286 F.3d 613, 617 (2d Cir. 2002). It is well established that "an issuer has an implied right of action to seek injunctive relief for a violation of [S]ection 13(d)." *CSX Corp. v. Child.'s Inv. Fund Mgmt. (UK) LLP*, 654 F.3d 276, 284 (2d Cir. 2011). However, as we have emphasized, "an injunction will issue for a violation of [Section] 13(d) only on a showing of irreparable harm to the interests which that section seeks to protect." *Treadway Cos. v. Care Corp.*, 638 F.2d 357, 380 (2d Cir. 1980). The goal of Section 13(d) is "to alert the marketplace to every large, rapid aggregation or accumulation of securities . . . which might represent a potential shift in corporate control." *GAF Corp. v. Milstein*, 453 F.2d 709, 717 (2d Cir. 1971); *see also Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 58 (1975) ("The purpose of the Williams Act is to insure that public shareholders who are confronted by a cash tender offer for their stock will not be required to respond without adequate information regarding the qualifications and intentions of the offering party."). Accordingly, once the required disclosures are made, the "informative purpose" of Section 13(d) is satisfied and "there [is] no risk of irreparable injury and no basis for injunctive relief." *Treadway Cos.*, 638 F.2d at 380 (affirming dismissal of Section 13(d) claims after defendant's amended Schedule 13D cured the alleged deficiencies in its

5

filings); *see also Rondeau*, 422 U.S. at 59 n.9 (concluding that injunctive relief was not available "to remedy a [Section] 13(d) violation following compliance with the reporting requirements").

Here, the district court dismissed Nano's claims after concluding that Defendants' amended Schedule 13Ds satisfied Section 13(d)'s disclosure requirements. Relying on *Avnet, Inc. v. Scope Industries*, 499 F. Supp. 1121 (S.D.N.Y. 1980), and other decisions that have followed *Avnet*,[5] the district court determined that, because there was a good faith dispute as to whether Defendants had in fact acted as a group, disclosure of Nano's allegations and Defendants' countervailing position was sufficient. *See Nano Dimension Ltd. v. Murchinson Ltd.*, 681 F. Supp. 3d 168, 185–88 (S.D.N.Y. 2023). Nano challenges this conclusion on appeal, arguing that "Section 13(d) requires that a party disclose the *actual truth* (*e.g.*, whether they are acting as a group)," and that Defendants' disclosure and denial

---

[5] *See, e.g., Cartica Mgmt., LLC v. CorpBanca, S.A.*, 50 F. Supp. 3d 477, 496 (S.D.N.Y. 2014) ("The disclosures, which explain [plaintiff's] complaint, refute the allegations, and disclaim that [one defendant] has formed a group with the [other] defendants, were sufficient."); *Lions Gate Ent. Corp. v. Carl C. Icahn*, No. 10-cv-08169 (HB), 2011 WL 1217245, at *1 (S.D.N.Y. Mar. 30, 2011) ("Courts in this District and elsewhere have held that in an action claiming a failure to disclose under the [Exchange] Act, a defendant's filing an amendment to its Schedule 13D and attaching plaintiff's complaint is sufficient to satisfy Williams Act requirements and moot any Williams Act claim." (internal quotation marks and citation omitted)); *Taro Pharm. Indus., Ltd. v. Sun Pharm. Indus., Ltd.*, No. 09-cv-8262 (PGG), 2010 WL 2835548, at *10 (S.D.N.Y. July 13, 2010) ("[T]he courts that have considered this issue have generally held that annexing a copy of a complaint to an amended filing is sufficient to satisfy Williams Act requirements and moot any Williams Act claim.").

of Nano's *allegations* could not remedy any violation of the statute.  Appellant's Br. at 29.  We disagree.

Section 13(d) is satisfied "when the shareholders receive the information required to be filed."  *Treadway Cos.*, 638 F.2d at 380.  In *Avnet*, the court addressed defendants' disclosure obligations in the context of "a genuine and vigorous dispute . . . as to whether the [information] which the plaintiff alleges is required to be disclosed is actually a fact."  499 F. Supp. at 1125.  Reasoning that "defendants were not required to state in their schedules that the alleged facts were actually true," the court concluded that "disclosure of the *possibility* of the alleged fact, and the conflicting positions taken by the parties [was] sufficient."  *Id.* (emphasis added).  Thus, the court held that an amended Schedule 13D appending the complaint and denying the plaintiff's allegations satisfied Section 13(d), because "the only certain factual statement" was that there was "a possibility" of the disputed fact, and disclosure of the allegations "sufficiently inform[ed] [plaintiff's] shareholders of that possibility and of the parties' positions on that point."  *Id.* at 1126.

We agree with the rule espoused in *Avnet*, which is consistent with our cases cautioning that "[t]he disclosure required by the [Williams] Act is not a rite of

7

confession," but rather "[w]hat is required is the disclosure of material objective factual matters." *Data Probe Acquisition Corp. v. Datatab, Inc.*, 722 F.2d 1, 5–6 (2d Cir. 1983); *see also Mo. Portland Cement Co. v. Cargill, Inc.*, 498 F.2d 851, 872–73 (2d Cir. 1974) (holding that Cargill need not disclose a potential antitrust violation because "it would have been reasonable for Cargill's management to conclude that no antitrust obstacles actually existed," but that if the Federal Trade Commission were to file a complaint, Cargill "should disclose that fact, with whatever reasonable comments Cargill may choose to make about it.").

Applying that rule here, the district court correctly concluded that Defendants' amended filings satisfied Section 13(d), warranting dismissal of Nano's claims. The district court found that Defendants vigorously disputed Nano's allegations that they had acted as a group, noting that they had repeatedly detailed in public filings their "good faith dispute of [Nano's] claims." *Nano Dimension Ltd.*, 681 F. Supp. 3d at 186. Although Nano argues on appeal that the district court erred by making a factual finding at the motion-to-dismiss stage, we find this contention unpersuasive. The district court did not, as Nano asserts, make a factual finding as to Defendants' subjective intent. Instead, it made the threshold observation that Nano and Defendants disputed certain facts about the

8

nature of the relationship between the Defendants. The district court then concluded that Defendants' amended Schedule 13Ds satisfied Section 13(d)'s disclosure requirements because they detailed Nano's claims and Defendants' responses, allowing "members of the public the opportunity to assess the information themselves." *Id.* at 186.

We reach the same conclusion here. As correctly explained by the court in *Avnet*, genuine factual disputes need not be resolved to satisfy Section 13(d); instead, "the law requires only that the disputed facts and the possible outcomes be disclosed." 499 F. Supp. at 1125. The record here demonstrated a dispute as to whether Defendants acted as a group, and Nano presented no plausible basis in its complaint to reasonably infer that the dispute was not genuine or in good faith. Defendants' amended filings disclosed the possibility of the disputed fact, and we agree with the district court that "Section 13(d) requires no more in this case." *Nano Dimension Ltd.*, 681 F. Supp. 3d at 186. In other words, because the "informative purpose" of Section 13(d) was satisfied in this case, there was "no basis for injunctive relief" and Nano's claims were properly dismissed as moot. *Treadway Cos.*, 638 F.2d at 380.

Nano further argues that, even if Defendants' amended disclosures satisfied Section 13(d), its claims should survive a motion to dismiss because it is still entitled to retroactive injunctive relief. In particular, Nano asserts that "[e]quitable relief—including, *inter alia*, rescission of Defendants' unlawfully purchased ADS[s] and vacatur of their illegally cast votes—remains appropriate to address Defendants' violations of Section 13(d)" before May 2023, when Defendants filed their amended Schedule 13Ds. Appellant's Br. at 28. We disagree.

In its amended complaint, Nano alleged that Defendants started violating Section 13(d) in September 2022, when they collectively acquired more than five percent of Nano's ADSs. On January 22, 2023, Murchinson called for a special meeting of Nano's shareholders, which was held on March 20, 2023 (the "Special Meeting"). The day after Murchinson called for the Special Meeting, it filed its initial Schedule 13D. Nano alleged that the Special Meeting was "fake" and "invalid as a matter of Israeli law," Joint App'x at 453, and argues on appeal that the votes Defendants cast at this meeting must be canceled "to prevent irreparable harm resulting from those improper votes and Defendants' ongoing attempts to

10

change Nano's governance," Appellant's Br. at 45–46.[6] Nano also argues that Defendants' ADS purchases between September 2022 and May 2023 must be rescinded.

As the Supreme Court has recognized, Section 13(d) is not "a weapon for management to discourage takeover bids or prevent large accumulations of stock which would create the potential for such attempts." *Rondeau*, 422 U.S. at 58. In accordance with that principle, we have held that "injunctive share sterilization"— *i.e.*, an injunction negating votes cast by disputed shares—is not available under Section 13(d), at least where corrective disclosures have been made and the vote in question did not effect a change in control over the issuer.[7] *See CSX Corp.*, 654 F.3d at 286–87; *Treadway Cos.*, 638 F.2d at 380, 380 n.45; *see also Rondeau*, 422 U.S. at 57–58 (concluding that an injunction prohibiting the defendant from voting the shares purchased while in violation of Section 13(d) was not available because he later complied with the statute and did not attempt to obtain control of the issuer).

---

[6] Nano advises that "[t]he changes purportedly approved at the March 2023 meeting have not yet been implemented due to ongoing litigation in Israel addressing Defendants' separate violations of the Israel Companies law." Appellant's Br. at 46 n.13.

[7] Both parties approvingly cite *Raybestos-Manhattan, Inc. v. Hi-Shear Indus.*, 503 F. Supp. 1122, 1133 (E.D.N.Y. 1980), which held that "[t]he only situation in which disenfranchisement or divestiture may be permissible remedies for Section 13(d) violations is when the defendant obtains effective control of plaintiff through stock purchases before it comes into compliance with Section 13(d)." *See* Appellant's Br. at 52; Appellee's Br. at 53.

Here, because the Special Meeting involved the election of only two of seven directors, Nano is not entitled to such retroactive relief.

Still, Nano argues that injunctive share sterilization is appropriate in this case because Defendants had not yet filed amended Schedule 13Ds at the time of the Special Meeting. To be sure, our cases have "le[ft] open the question of what remedies might be appropriate when disclosure that is timely with respect to a proxy contest is not made," *CSX Corp.*, 654 F.3d at 287; however, Nano cannot identify a single case from this Circuit where an issuer was granted this form of injunctive relief *after* the vote had taken place. *See Piper v. Chris-Craft Indus., Inc.*, 430 U.S. 1, 42 (1977) ("[I]n corporate control contests[,] the stage of preliminary injunctive relief, rather than post-contest lawsuits, is the time when relief can best be given." (internal quotation marks and citation omitted)). In any event, Nano has not adequately alleged that the Special Meeting—which took place *before* Nano filed its initial complaint—caused irreparable harm to the informational interests that Section 13(d) seeks to protect. *See Treadway Cos.*, 638 F.2d at 380. Defendants did not attempt to obtain control of Nano and, for the reasons discussed *supra*, have adequately complied with Section 13(d)'s disclosure requirements; thus, "[o]n this record there is no likelihood that [Nano's] shareholders will be

12

disadvantaged should [Murchinson or Anson] make a tender offer, or that [Nano] will be unable to adequately place its case before them should a contest for control develop." *Rondeau*, 422 U.S. at 59. Accordingly, Nano is not entitled to injunctive relief, retrospective or otherwise.

## CONCLUSION

We have considered Nano's remaining arguments and find them to be without merit.[8] Accordingly, we **AFFIRM** the order of the district court.

---

[8] To the extent that Nano argues that the district court erred in dismissing the complaint without providing it with an opportunity to re-plead in a second amended complaint, we find that argument unpersuasive. Nano did not request leave to re-plead and has failed to articulate how any additional allegations could correct the substantive deficiencies identified by the district court in dismissing its amended complaint. Thus, we discern no error in the district court's dismissal of the complaint with prejudice. *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (concluding that "no court can be said to have erred in failing to grant a request [for leave to amend] that was not made," especially when the plaintiff has provided no "indication that [he] could—or would—provide additional allegations that might lead to a different result").

13