**KAUFMAN AND BROAD, INC., a Maryland corporation, Plaintiff,**

v.

**Samuel BELZBERG, William Belzberg, Hyman Belzberg, David A. Croll, Richard C. Baxter, Allister M. G. Grosert, W. Bernard Herman, Joseph H. Shocter, Arnold H. Jeffrey, Glenn M. Ferguson, D. U. Pekarsky, David Laven, Frank D. Jones, Roderick R. McDaniel, Michael Cytrynbaum, Morley Koffman, Roxboro Investments, Ltd., an Alberta corporation, First City Financial Corporation Limited, a British Columbia corporation, First City Trust Company, an Alberta corporation, First City Developments, Ltd., an Alberta corporation, First City Developments Corporation, a Washington corporation, Bel-Fran Investments Limited, an Alberta corporation, Bel-Cal Holdings, Limited, an Alberta corporation, Bel-Alta Holdings, Limited, an Alberta corporation, and Far West Financial Corporation, a Delaware corporation, Defendants.**

80 Civ. 5981 (WCC).

United States District Court, S. D. New York.

March 12, 1981.

White & Case, New York City, for plaintiff; Thomas McGanney, Peter M. Collins, Edward J. M. Little, New York City, of counsel.

Skadden, Arps, Slate, Meagher & Flom, Solin & Breindel, New York City, for defendants; Jeffrey Glekel, Charles Yablon, Katherine Hill, Laura Ward, New York City, of counsel.

## OPINION AND ORDER

CONNER, District Judge.

On October 21, 1980, plaintiff Kaufman and Broad, Inc. ("K & B") filed a complaint for injunctive and other equitable relief, charging defendants with violations of Sections 13 and 14 of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. §§ 78m

and 78n, Regulation X of the Federal Reserve Board, 12 C.F.R. § 224 ("Regulation X") and unspecified common law violations. Presently before the Court is defendants' motion to dismiss for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6), F.R.Civ.P.[1]

## BACKGROUND

K & B is a Maryland corporation, with its principal offices located in Los Angeles, California, engaged in the life insurance and housing industries. This action arises out of the purchases, over an eight-month period, of approximately 10.39% of K & B common stock by First City Financial Corporation, Limited ("First City"), which is incorporated under the laws of British Columbia, Canada.

Defendants Bel-Fran Investments, Limited, Bel-Cal Holdings, Limited and Bel-Alta Holdings, Limited ("Bel Corporations") are three Alberta, Canada corporations which own approximately 83.4% of the outstanding common stock of First City. Defendant Roxboro Investments, Ltd. ("Roxboro") is an Alberta corporation which owns all of the Class A voting stock of each of the Bel Corporations. Roxboro in turn is controlled by defendants Samuel Belzberg, William Belzberg and Hyman Belzberg ("Belzbergs"), Canadian citizens residing respectively in British Columbia, California and Alberta. The Belzbergs are each directors and/or officers of each of the above-mentioned defendants.

Defendants First City Trust Company, an Alberta corporation, First City Developments, Ltd., an Alberta corporation, and First City Developments Corporation, a Washington corporation, are wholly or partly owned subsidiaries of First City.

Defendant Far West Financial Corporation, a Delaware corporation, is identified as the holding company for Far West Savings and Loan. The relationship of these entities to the Belzbergs and to the allegations in the complaint is not explained.

The remaining individual defendants include some of the directors and officers of First City or of other corporate defendants.

On April 10, 1980, First City and the Bel Corporations filed a Schedule 13D Statement with the Securities and Exchange Commission ("SEC"), disclosing that on April 3, 1980 First City had purchased approximately 493,300 shares of K & B common stock in open market transactions executed on the New York Stock Exchange; that First City's holding of K & B common stock totaled 693,300 shares, or 5.9% of the total shares outstanding; that the Bel Corporations owned 90,500 shares, or .8% of the total shares outstanding; that the Belzbergs might be deemed to have shared voting and disposition power regarding the aggregate of 783,800 shares owned by First City and the Bel Corporations; that the purpose of the purchases was to invest in K & B and that the purchasers did not have any present plan to acquire control of K & B; that the purchasers might, as investors, increase, hold, decrease or dispose of their position in K & B; that the source of funds for the purchases of the K & B stock held by First City and a portion of the stock held by the Bel Corporations was advances under lines of credit maintained by First City and the Bel Corporations with the Toronto-Dominion Bank, Toronto, Canada ("TDB"); and that such lines of credit were secured by, among other collateral, the K & B stock held by First City and the Bel Corporations.

On July 23, 1980, First City filed Amendment No. 1 to its Schedule 13D Statement disclosing that it had acquired 206,200 additional shares of K & B stock, including the 90,500 shares previously held by the Bel Corporations; that First City then held a total of 899,500 K & B shares, or 7.6% of the outstanding K & B common stock; that such additional purchases were accomplished by advances under First City's line of credit with TDB; that First City's purpose had been to increase its investment in K & B; and that First City did not have any plan to acquire control of K & B.

---

1. As K & B has pointed out, to the extent defendants ground their motion on a record supplementing the complaint, their motion is one for summary judgment, Rule 56, F.R.Civ.P.

On October 3, 1980, First City filed Amendment No. 2 to its Schedule 13D Statement, disclosing that First City had purchased an additional 164,500 shares of K & B common stock; that First City then held 1,064,000 K & B shares, or 8.97% of the outstanding K & B common stock; that such additional purchases were accomplished by advances under First City's line of credit with TDB; that First City's purpose had been to increase its investment in K & B; that First City intended to acquire additional K & B common stock in order to benefit from certain tax consequences incident to ownership of not less than 10% of the outstanding K & B common stock; and that First City did not have any plan to acquire control of K & B.

On October 8, 1980, First City filed a Disclaimer of Affiliation with the Georgia Insurance Commissioner pursuant to Georgia law. Because First City by that time had acquired more than 10% of the K & B common stock, and because Coastal States Life Insurance Company ("Coastal"), a Georgia-licensed insurance company, is an indirect K & B subsidiary, under Georgia law a rebuttable presumption arose that First City had acquired control of a Georgia insurance company. Such control triggers certain registration and hearing requirements in connection with the Georgia Insurance Commission. However, as permitted by Georgia law, First City disclaimed any control over K & B and Coastal, noting that 21.1% of K & B common stock was held by Eli Broad and Donald Kaufman, chairman and vice chairman, respectively, of the K & B board of directors. In order to assure the Georgia Insurance Commission that First City would not seek control of K & B without first making the requisite filings and disclosures under Georgia insurance law, First City committed that until either making such filings and disclosures or notifying the Commission by filing a disclaimer of control, First City (1) will not seek to obtain representation on the board of directors of K & B or any of its subsidiaries, including Coastal, (2) will not vote any K & B stock in excess of 9.9% of the outstanding shares, and (3) will not seek to increase its percent-

age ownership of K & B common stock. These commitments were subsequently incorporated into a consent decree entered into by First City and the Georgia Insurance Commission.

On October 10, 1980, First City filed Amendment No. 3 to its Schedule 13D Statement disclosing that First City had purchased an additional 167,500 shares of K & B common stock; that First City then held 1,231,000 K & B shares, or 10.39% of the outstanding K & B common stock; that such additional purchases were accomplished by advances under First City's line of credit with TDB; and that First City had made commitments to the Georgia Insurance Commission as detailed above.

K & B commenced this action by filing its complaint dated October 21, 1980. While the complaint conclusorily alleged a conspiracy to defraud among all the defendants, the only substantive allegations are:

(1) that defendants' Schedule 13D Statement and Amendments thereto fail to disclose certain information in violation of Section 13 of the 1934 Act (Count One);

(2) that defendants' conduct is in violation of Regulation X (Count Two); and

(3) that defendants are in fact engaged in a tender offer to K & B stockholders and have failed to make the requisite disclosures incident thereto under the 1934 Act (Count Three).

Upon filing its complaint, and prior to service of the complaint upon any defendant, K & B immediately sought to obtain an order to show cause why K & B should not be permitted to obtain expedited discovery. Counsel for defendants was notified, and a conference was held on October 28, 1980. At that time, the Court denied K & B's application for expedited discovery on the basis of defendants' representations that it had no intent to acquire any additional K & B stock in the near future.

Defendants filed the instant motion on November 18, 1980. At a December 5, 1980 pretrial conference, it was resolved that, with certain exceptions, discovery would be stayed pending resolution of the motion and

that the allegations of fraud (as distinguished from nondisclosure) would be stricken from the complaint (rendering moot the portion of defendants' motion based upon alleged noncompliance with Rule 9(b), F.R.Civ.P.). The stay of discovery was subsequently conditioned on defendants' stipulation to provide advance notice to K & B of any purchases of K & B stock increasing defendants' percentage holding thereof.

On December 10, 1980, during the course of submissions made by the parties on the motion, First City filed Amendment No. 4 to its Schedule 13D Statement, which disclosed the fact of this litigation and a summary of K & B's allegations. The Amendment also disclosed that advances under First City's line of credit with TDB are repayable upon demand. Attached as Exhibits to Amendment No. 4 were the complaint in this action and two commitment letters from TDB to First City.

## DISCUSSION

As previously detailed, K & B's complaint is in three counts and purports to state claims under Section 13(d) of the 1934 Act, Regulation X and Section 14(d) of the 1934 Act, respectively. As to each of these, defendants have advanced several grounds in support of their motion. The discussion will separately focus upon each of K & B's claims.

### 1. *Section 13(d)*

Under Section 13(d), once First City acquired more than 5% of the K & B common stock, it became obliged to file with the SEC and elsewhere a Schedule 13D Statement, disclosing certain information required by the statute and SEC regulations. Paragraph 18 of K & B's complaint alleges that First City's Schedule 13D and Amendments thereto are misleading in that

"(i) They do not disclose the effect of regulations imposed by the S.E.C., the New York Stock Exchange, the Federal Reserve, and other regulatory agencies on defendants' financing arrangements for their purchases of K & B stock, including specifically the application of regulations that could require the sale of defendants' holdings;

"(ii) They do not disclose the terms of defendant First City's indebtedness to Toronto-Dominion Bank for the funds used to purchase K & B stock and the arrangements by which such indebtedness is secured by defendant First City's holdings of K & B stock, including specifically such terms as may require the sale of such stock;

"(iii) They do not disclose the effect upon the market price of K & B stock in the event that sales of First City's holdings of K & B stock are required;

"(iv) They do not disclose information regarding defendants' financial condition necessary to make the statements made, in the light of the circumstances under which they are made, not misleading;

"(v) The initial 13D and the Amendment dated July 23, 1980 falsely and in a misleading manner stated that the purchases of K & B common stock by defendants was [sic] 'for the making of an investment' in K & B, and that the defendants 'did not at the time of such purchases and do not currently have any plans to acquire control of . . .' K & B, whereas, in truth and in fact, as indicated for the first time in the Amendment filed October 3, 1980, defendants intended to purchase additional shares of K & B and have continued to purchase K & B stock until First City now owns more than 10% thereof, all of which confirm that the true purpose of defendants' purchases of K & B common stock is to acquire control of K & B. However, defendants continue, falsely and fraudulently and in a misleading manner, to omit a disclosure that their true intentions is to take over K & B; and

"(vi) Said 13D and Amendments falsely and in a misleading manner fail to disclose that as a consequence of defendants' purchases of, and conduct affecting, K & B common stock, defendants are violating federal and state laws and regulations."

As to this claim, defendants have advanced three grounds for their motion: (1) that K & B has no private right of action under Section 13(d); (2) that any facts not disclosed in the Schedule 13D Statement are not required to be disclosed; and (3) that K & B has not sufficiently alleged irreparable harm. Each of these will be discussed in turn.

### A. *Right of Action*

■ Section 13(d) makes no provision for a private right of action, and thus any such private remedy must be judicially implied. In arguing against such an implied cause of action here, defendants concede that the law in this circuit is to the contrary, *i. e.*, that an issuer does have a private right of action for injunctive relief under Section 13(d). *GAF Corp. v. Milstein*, 453 F.2d 709 (2d Cir. 1971), *cert. denied*, 406 U.S. 910, 92 S.Ct. 1610, 31 L.Ed.2d 821 (1972).

Defendants argue, however, that two subsequent Supreme Court ·decisions have called into question the continuing vitality of *GAF*. In *Touche Ross & Co. v. Redding-ton*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979), the Court held that there is no implied private cause of action for damages under Section 17(a) of the 1934 Act. And in *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979), the court held that there is no implied private cause of action for damages under Section 206 of the Investment Advisors Act of 1940. Defendants fasten their argument upon language in these decisions suggesting that the Court is presently less willing to imply private causes of action under the securities laws than it was when the Second Circuit rendered its decision in *GAF*.

Nevertheless, it is manifest that neither of these decisions purported to overrule *GAF*, which remains the law of this circuit and which this Court is obliged to follow. The Supreme Court apparently has not understood its decisions as overruling *GAF*, as the Court has recently denied a petition for certiorari in *Unitex Limited v. Dan River, Inc.*, 449 U.S. 1101, 101 S.Ct. 896, 66 L.Ed.2d 827 (1981), letting stand a decision of the Fourth Circuit following *GAF*, 624 F.2d 1216 (1980). Furthermore, the Second Circuit has continued to adhere to *GAF* after *Touche Ross* and *Transamerica*. See *Treadway Companies, Inc. v. Care Corp.*, 638 F.2d 357, 1980 Fed.Sec.L.Rep. (CCH) ¶ 97,603 (2d Cir. 1980).

This Court has neither the inclination nor the effrontery to ignore or defy the applicable rulings of the Court of Appeals in this Circuit.

### B. *Requisite Disclosures*

The disclosures required in a Schedule 13D Statement are established in Section 13(d):

"(A) the background, and identity, residence, and citizenship of, and the nature of such beneficial ownership by, such person and all other persons by whom or on whose behalf the purchases have been or are to be effected;

"(B) the source and amount of the funds or other consideration used or to be used in making the purchases, and if any part of the purchase price is represented or is to be represented by funds or other consideration borrowed or otherwise obtained for the purpose of acquiring, holding, or trading such security, a description of .the transaction and the names of the parties thereto, except that where a source of funds is a loan made in the ordinary course of business by a bank, as defined in section 78c(a)(6) of this title, if the person filling such statement so requests, the name of the bank shall not be made available to the public;

"(C) if the purpose of the purchases or prospective purchases is to acquire control of the business of the issuer of the securities, any plans or proposals which such persons may have to liquidate such issuer, to sell its assets to or merge it with any other persons, or to make any other major change in its business or corporate structure;

"(D) the number of shares of such security which are beneficially owned, and the number of shares concerning which

there is a right to acquire, directly or indirectly, by (i) such person, and (ii) by each associate of such person, giving the background, identity, residence, and citizenship of each such associate; and

"(E) information as to any contracts, arrangements, or understandings with any person with respect to any securities of the issuer, including but not limited to transfer of any of the securities, joint ventures, loan or option arrangements, puts or calls, guaranties of loans, guaranties against loss or guaranties of profits, division of losses or profits, or the giving or withholding of proxies, naming the persons with whom such contracts, arrangements, or understandings have been entered into, and giving the details thereof."

15 U.S.C. § 78m(d).

These items are more fully detailed in the form Schedule 13D promulgated by the SEC, 17 C.F.R. § 240.13d–101.

In addition, SEC Rule 12b–20 specifies that

"[i]n addition to the information expressly required to be included in a statement or report, there shall be added such further material information, if any, as may be necessary to make the required statements, in the light of the circumstances under which they are made not misleading."

17 C.F.R. § 240.12b–20.

By its plain language, Rule 12b–20 requires the disclosure of additional material information necessary to make the required Section 13(d) disclosures not misleading. The rule does not, as K & B argues, convert Section 13(d) into a mandate to disclose any and all material information, even if unrelated to the areas of disclosure required by Section 13(d).[2]

Defendants contend that the six nondisclosures alleged in the complaint do not, for various reasons, constitute violations of Section 13(d).

■ The first and sixth of K & B's allegations refer to unspecified violations of federal and state laws and various regulations. In detailing these claims, K & B has pointed only to First City's alleged violation of Regulation X. In Part 2 of this Opinion, the Court endorses defendants' position that the relevant transactions of First City are not subject to Regulation X. Accordingly, K & B cannot state a claim under Section 13(d) for nondisclosure of such nonexistent violations.

■ K & B's second allegation is that First City did not disclose the terms of First City's indebtedness to TDB regarding First City's financing of its purchases of K & B stock. First City's Schedule 13D Statement does in fact disclose the source and amount of funds borrowed to purchase K & B stock, the effective interest rate, the use of the K & B securities as collateral, the source of

2. K & B premises this argument upon a footnote in *Avnet, Inc. v. Scope Industries*, 499 F.Supp. 1121 (S.D.N.Y.1980). According to K & B, Judge Lasker in *Avnet* admonished "that Section 13(d), like Schedule 14D–1, requires 'disclosure of every material fact.'" Plaintiff's Brief in Rebuttal at p. 15, quoting from *Avnet, supra*, at 1127 n.9. In fact, after summarizing plaintiff Avnet's argument as to a contention that a particular "... disclosure is necessary to make statements in the Schedule 13D not false or misleading[,]" Judge Lasker determined:

"Finally, Scope and Luskin argue that Section 13(d) requires disclosure of specified information only, and unlike the case of a Schedule 14D–1 which is required to be filed in the tender offer context, does not require disclosure of every material fact. See 17 C.F.R. § 240.14d–100 (Item 10(f)). However, SEC Rule 12b–20, 17 C.F.R. § 240.12b–20,

requires the disclosure of 'material information ... necessary to make the required statements, in light of the circumstances under which they are made not misleading,' and that rule applies to Schedule 13D by virtue of Rule 12b–1, 17 C.F.R. § 240.12b–1."

*Avnet, supra*, at 1127 n.9.

*Avnet* thus points out the application of Rule 12b–20 to Section 13(d), and the facts of that case in no way supports K & B's hypothesis that a Schedule 13D must disclose every material fact. Furthermore, K & B's quotation of the phrase "disclosure of every material fact" as part of Judge Lasker's purported holding that that is what Section 13(d) requires is misleading, since the phrase appears only in Judge Lasker's summary of the defendants' argument that Section 13(d) does not require disclosure of every material fact.

funds for repayment and the temporary nature of the loan agreements. Defendants take the position that disclosure of the actual loan agreements is not required, is not material, and in any event has been satisfied by First City's Amendment No. 4, which includes August 1 and December 4, 1980 commitment letters from TDB to First City. K & B argues that defendants' disclosure is likely not complete, as there must be additional documentation regarding the pledge of the securities, money actually borrowed, rights and obligations regarding the pledged securities in the event of a default and other circumstances, and that any oral understandings regarding any pledge agreements must also be disclosed pursuant to Item 6 of Schedule 13D.

The Court concludes that K & B's position must be sustained here. Item 7 of Schedule 13D specifically requires the filing of "... copies of all written agreements, contracts, arrangements, understandings, plans or proposals relating to ... the borrowing of funds to finance the acquisition as disclosed in Item 3 ...." And while a private suitor must do more than establish a mere technical violation of Section 13(d), *e. g., Wellman v. Dickinson,* 475 F.Supp. 783, 833 (S.D.N.Y.1979); *Universal Container Corp. v. Horwitz,* 1977–78 CCH Fed.Sec. L.Rep. (CCH) ¶ 96,161 at 92,255 (S.D.N.Y. 1977), at this juncture the Court cannot conclude as a matter of law that First City's alleged failure to file documents determined to be material by SEC regulation is a mere technical violation. Finally, aside from assertions of defendants' attorneys in their legal memoranda, the record contains no affidavit from defendants contradicting K & B's charge that the belatedly disclosed and cryptic commitment letters cannot possibly be in full satisfaction of Item 7 and other provisions of Schedule 13D.

■ K & B's third allegation is that First City's Schedule 13D Statement fails to disclose "the effect upon the market price of K & B stock in the event that sales of First City's holdings of K & B stock are required." Such a disclosure is not required anywhere in Section 13(d) or Schedule 13D,

and K & B makes no attempt to argue that such a disclosure is necessary to make the requisite disclosures not misleading. There is no allegation that such sales are contemplated, and in fact K & B's allegation appears largely to be mispremised upon the inaccurate conclusion that First City has violated Regulation X and consequently may be required to liquidate its K & B holding, see Point 2, *infra.* Moreover, conjecture by defendants as to the market consequences of remotely possible sales would appear to be precisely the type of speculation not properly included in a factual disclosure document such as Schedule 13D. Defendants' position that this alleged nondisclosure does not state a claim under Section 13(d) is sustained.

■ K & B's fourth allegation is that Rule 12b–20 requires the disclosure of defendants' financial condition. Defendants argue that since Schedule 13D does not require, and First City has not made, any statements regarding its financial condition in its Schedule 13D (its financial statements are contained in other public filings required under Canadian law), there can be no additional disclosures necessary to make the disclosures made not misleading. K & B has responded by contrasting First City's purchase of K & B stock for over $12 million of borrowed funds with First City's 1979 net income of $6.9 million, and argues that "[t]he financial condition of the Belzberg family holdings, which are not disclosed in any public reports, but which are central to the financial condition of First City, must be explored." Plaintiff's Memorandum in Opposition to Motion to Dismiss at p. 32.

However, the precondition to any such exploration is the pleading of a viable claim, and K & B nowhere supplies defendants or the Court with even a clue as to what area of information First City failed to disclose in alleged contravention of Section 13(d). All of the facts deemed material by K & B—First City's financial condition, the extent of First City's borrowing to finance its purchases of K & B stock and First City's relationship to the Belzbergs

and other Belzberg-controlled companies—is public information disclosed either in First City's Schedule 13D or elsewhere. To the extent K & B is suggesting that financial information as to closely-held corporate defendants other than First City is required, its position is rejected because: (1) there is no allegation that First City is not a legitimate independent corporate entity, (2) K & B has offered no authority for the proposition that such information is required to be disclosed under Section 13(d), and (3) K & B has offered no rationale as to why such information would be required, pursuant to Rule 12b–20, to make the information disclosed in the Schedule 13D not misleading.

K & B takes the position that, having conclusorily alleged that unspecified financial information is required and undisclosed, its claim is insulated from a motion to dismiss provided that it is possible that it might, through discovery, uncover facts which could support the pleaded conclusion. But the minimal pleading requirements of the federal rules do require the setting forth of the basic facts upon which the claim is based, and K & B's failure to do so here is fatal to this portion of its claim.

■ K & B's fifth allegation is that First City has not disclosed that its true intention is to acquire control over K & B. The complaint points out that the initial Schedule 13D and the first amendment thereto indicated that First City's purpose was investment and that it had no intention at that time to acquire control of K & B; that in fact, as confirmed by Amendment No. 2, First City intended to acquire additional K & B stock; and that these purchases confirm that First City's true purpose is to acquire control of K & B. In further support of this allegation, K & B in its motion papers has argued:

(1) that First City's disclosure in its October 3, 1980 Amendment No. 2 to its Schedule 13D Statement that its purpose in in-

creasing its investment was to obtain favorable tax treatment exposes First City's prior filings as deficient because the Canadian tax law had not changed in the interim since its prior filings;

(2) that First City's claim regarding its increased investment in accordance with such tax advantages is untruthful because the tax advantage is more than offset by the interest payments on funds borrowed to purchase the additional K & B stock;

(3) defendants' broker has been encouraging others to accumulate large blocks of K & B stock for sale to First City; and

(4) First City's willingness to borrow extensively and open new lines of credit indicates that its intention is not merely investment but rather to acquire control of K & B.

Defendants have argued in response that subsequent purchases of K & B are not inconsistent with its initial filings, which advised that First City might decide to increase its investment in K & B; that there is nothing inconsistent in First City's initial intention to invest in K & B and its subsequent intention to increase that investment to obtain certain incidental tax advantages; that in any event any inadequacy in the original filing regarding First City's intention to acquire 10% of K & B stock was cured by Amendment No. 2, and K & B's claim is moot to that extent; that First City's decision to increase its investment to in excess of 10% must be evaluated in conjunction with *both* the tax advantages and the advantages of the investment itself, and thus considered these purchases were economically beneficial to First City; that the allegation regarding First City's broker's interest in blocks of K & B stock evidences the truthfulness of First City's disclosure because such interest is alleged to have occurred on the same date that First City filed its Amendment No. 2, disclosing First City's intention to increase its investment to in excess of 10%; [3] that the absence of

---

**3.** In fact, First City's broker is purported to have expressed interest in blocks of K & B stock on September 24, 1980, while First City filed Amendment No. 2 on October 3, 1980. However, Amendment No. 2 does list September 24, 1980 as the date of the event which required the filing of the amendment; *i. e.*, the date by which First City increased its investment to 8.97% and purportedly determined to increase it to in excess of 10%.

any present intent to seek control of K & B is confirmed by First City's entry into a consent decree with the Georgia Insurance Commissioner, as detailed above; and that, under these circumstances, even if First City had a plan to seek control, such a plan would necessarily be so tentative and contingent as to be immaterial.

If K & B's allegation as to First City's intent is true, it is plain that nondisclosure of such would be violative of Section 13(d). The question arises as to whether the mere assertion that a defendant's actual undisclosed intent is to acquire control is sufficient to state a claim, mindful of the Supreme Court's admonition that Section 13(d) was not designed to provide a weapon for management to prevent large accumulations of stock, *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 58, 95 S.Ct. 2069, 2076, 45 L.Ed.2d 12 (1975), and of the potential for abusive and harassing litigation that might be instigated against every investor that acquires sufficient shares and files a Schedule 13D.

In *Dan River, Inc. v. Unitex Limited*, 624 F.2d 1216 (4th Cir. 1980), *cert. denied*, 449 U.S. 1101, 101 S.Ct. 896, 66 L.Ed.2d 827 (1981), the Fourth Circuit appears to have taken the position that a plaintiff must set forth "a reasonable basis for assailing the accuracy or truthfulness of the essential statements mandated by the statute for inclusion in the 13D Schedule." *Id.* at 1222 n.5. In reversing the granting of a motion to dismiss the plaintiff's claim that the defendant's Schedule 13D did not disclose its true intent in acquiring stock of the plaintiff, the court concluded:

"... the pleadings and the showing of the parties raise relevant questions that require further inquiry ....

"When a plaintiff raises the number and kind of doubts about a Schedule 13D that Dan River raises here, a court is not to take a mechanical approach by refusing further inquiry into the plaintiff's allegations ...

"The record suffices to make the truthfulness and completeness of the defendants' Schedule a justiciable issue into which the district court should have inquired."
*Id.* at 1226–27.

Applying these principles here, I conclude that this portion of K & B's complaint states a justiciable claim. While the record indicates nothing that is necessarily inconsistent with First City's proffered purposes, the extent of First City's acquisitions and related borrowings is sufficient at this stage, where K & B has had virtually no opportunity to conduct discovery, to raise reasonable questions as to First City's actual intent.

For these reasons, defendants' motion, to the extent it is based upon the contention that the alleged nondisclosures do not specify items required to be disclosed by Section 13(d), is granted as to the first, third, fourth and sixth items of paragraph 18 of the complaint, and is denied as to the second and fifth of these allegations.

*C. Irreparable Harm*

██ Injunctive relief in an action under Section 13(d) may only be awarded upon a showing of irreparable harm. *Rondeau, supra.* Thus, in *Rondeau*, the Court sustained dismissal of an action under Section 13(d) upon the filing of a proper Schedule 13D Statement, because "the usual basis for injunctive relief, 'that there exists some cognizable danger of recurrent violation,' is not present here." *Id.* 422 U.S. at 59, 95 S.Ct. at 2076, quoting *United States v. W. T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). As to any investors who sold at an unfairly depressed price prior to the corrective filing, the Court concluded that such persons had an adequate legal remedy by way of an action for damages. *Id.* 422 U.S. at 60, 95 S.Ct. at 2077.

Similarly, in *Treadway Companies, Inc. v. Care Corp.*, 638 F.2d 357 1980 Fed.Sec.L. Rep. (CCH) ¶ 97,603 (2d Cir. 1980), the court sustained dismissal of the complaint charging that defendant had failed to disclose its intention to seek control of the plaintiff,

where the defendant had subsequently amended its Schedule 13D Statement to disclose that defendant had determined to seek control of the plaintiff.

■ On the other hand, the requisite irreparable harm has been found where, as here, there are sufficiently pleaded allegations of *continuing* material nondisclosures. *General Aircraft Corp. v. Lampert*, 556 F.2d 90 (1st Cir. 1977); *W. A. Krueger Co. v. Kirkpatrick, Pettis, Smith, Polian, Inc.*, 466 F.Supp. 800 (D.Neb.1979). In *General Aircraft Corp.*, the court reasoned:

> "As the very *raison d'être* of Section 13(d) was thwarted by appellants' continued failure to disclose the statutorily required information, we discover no error in the decision that irreparable injury would occur to shareholders and the investing public if appellants were allowed to continue their activities without correcting and amplifying their Schedule 13D."
>
> *Id.* at 96–97.

■ Defendants seek to distinguish this case from *General Aircraft* by pointing to First City's consent decree with the Georgia Insurance Commissioner and arguing that under the decree and applicable Georgia law, extensive filings, notice, opportunity for a hearing and Commission approval must precede First City's purchase of control of K & B, precluding any possibility of irreparable harm. Even assuming the doubtful proposition that the proceedings before a state insurance commission would as a matter of fact, and could as a matter of law, substitute for disclosures required by federal legislation designed for the protection of investors, under its consent decree, First City may continue to purchase K & B stock without any further disclosures, provided it does not thereby acquire "control" of K & B and files a disclaimer of control. Under these circumstances, the Court is not persuaded by defendants' contention that K & B has not adequately pleaded irreparable harm resulting from the allegedly uncorrected misleading Schedule 13D Statement.

*2. Regulation X*

K & B claims that First City's 100% financing of its stock purchases by credit secured by the same stock is in violation of federal reserve margin rules, made applicable to First City by Regulation X. Defendants contend, and the Court agrees, that Regulation X does not apply to First City's transactions here.

Where, as here, the transaction involves both a foreign borrower (First City) and a foreign lender (TDB), Regulation X applies to the borrower only where the borrower is "controlled by a U.S. person or acting on behalf of or in conjunction with such a person . . . ." 12 C.F.R. § 224.2(b)(1). K & B argues that First City is "acting on behalf of or in conjunction with" a U.S. person by virtue of William Belzberg's indirect interest in First City. While the Belzbergs are all citizens of Canada, William Belzberg is a resident of the United States and would appear to qualify as a U.S. person under the Regulation. Since the Belzbergs each control ⅓ of Roxboro, which owns 100% of the voting stock of the Bel Corporations, which in turn own approximately 83.4% of the voting stock of First City, it would further appear that William Belzberg is the effective beneficial owner and controller of approximately 28% of the voting stock of First City. Thus, argues K & B, First City is "acting on behalf of or in conjunction with" William Belzberg.

Regulation X defines "acting on behalf of or in conjunction with" as

> "obtaining credit for the purpose of purchasing or carrying a security in which, or in the income or gains or losses from which, a U.S. person or a foreign person controlled by a U.S. person has a substantial direct or indirect beneficial interest. Absent these factors the term does not include an interest derived solely from the ownership of less than 50 percent of the outstanding capital stock issued by such foreign person who is obtaining such credit."
>
> 12 C.F.R. § 224.5(a).

Defendants focus on the second sentence of the definition and argue that William Belzberg's minority interest in First City is insufficient to trigger application of the Regulation. K & B argues that William Belzberg's minority interest satisfies the "substantial direct or indirect beneficial interest" test of the first sentence, and that the exclusion in the second sentence is irrelevant because the introductory phrase "[a]bsent these factors" limits the second sentence to situations where there is no "substantial direct or indirect beneficial interest."

One of the problems with K & B's reading of this subsection, as defendants point out, is that it renders the second sentence meaningless. On K & B's reading, the first sentence operates to include within Regulation X foreign borrowers with substantial minority United States ownership and to exclude foreign borrowers with insubstantial minority United States ownership. The second sentence operates to exclude foreign borrowers with minority United States ownership, but only if they have already been excluded under the first sentence. One can presume that the second sentence was intended to have some significance, but on K & B's reading it functions only to exclude what has already been excluded by the first sentence.

A more careful reading of this definitional subsection reveals that the first and second sentences are directed to separate inquiries. The first sentence seeks to measure the interest of any U.S. persons in the stock to be purchased by the foreign borrower, while the second sentence inquires as to the extent of U.S. ownership of the foreign borrower. Thus, for example, if A, a foreign person borrowing funds from a foreign source, and B, a U.S. person, enter into a joint venture to purchase the stock of C, a U.S. corporation, pursuant to the first sentence, A is subject to Regulation X provided B's interest in the stock of C is substantial.

To illustrate the operation of the second sentence, let us postulate that A is a foreign corporation of which D, a U.S. person, is a substantial minority stockholder. A is borrowing funds from a foreign source in order to purchase the stock of C. Under these circumstances, where the interest of D, the U.S. person, in the stock of C is derived solely from D's minority ownership of A, the foreign borrower, the exclusion of the second sentence controls. But if we add the further stipulation that D has a substantial beneficial interest in the stock of C independent of D's minority ownership of A, then the introductory phrase "[a]bsent these factors" directs priority back to the first sentence and Regulation X applies.[4]

▪ In this case, the interest of the U.S. person—William Belzberg—derives solely from a minority stock holding in the foreign borrower—First City. Under these circumstances, the second sentence controls. First

---

**4.** This interpretation of the definitional subsection is confirmed by a December 1977 letter from a senior attorney at the Federal Reserve Board expressing the staff's views which defendants have submitted. In that letter, the author noted that Regulation X would apply by virtue of the existence of a substantial co-venturer controlled by a U.S. person, but that Regulation X would not apply if the interest of the U.S. person-controlled entity "derived solely from the ownership of less than 50 per cent of the outstanding stock *issued by the foreign person who is obtaining the purpose credit* . . ." (emphasis in original).

K & B has also submitted for the Court's consideration a redacted letter from an official of the New York Federal Reserve Bank in which the author arguably opined that substantial minority U.S. ownership of a foreign borrower would trigger application of Regulation X. If in fact this is the author's "interpretation," it must be rejected as contrary to the written regulation for the reasons previously detailed. However, it is not clear that the author was speaking so broadly, as the factual situation under consideration there involved a foreign borrower, unlike First City, organized solely for the purpose of investing in equity securities listed on the New York and American Stock Exchanges, and the author appears to have viewed the foreign borrower as having been established to circumvent application of the federal margin regulations. In any event, defendants point out that only the Federal Reserve Board in Washington can issue interpretations of its regulations applicable nationwide, and that the letter in question comes from an employee of a branch of the Bank which would not have jurisdiction over the extension of credit at issue in this case.

City is not "acting on behalf of or in conjunction with" a U.S. person, and Regulation X is inapplicable to the transactions in question here.

In view of this determination, the Court expresses no opinion regarding defendants' alternative contention that, even if Regulation X were to be applicable to First City's financing of its purchases of K & B stock, K & B lacks standing to complain of any violation of Regulation X by First City.

Defendants' motion to dismiss Count Two of the complaint is granted.

### 3. *Section 14*

Count Three of K & B's complaint charges that defendants are engaged in an illegal tender offer to K & B shareholders. The facts pleaded in support of this allegation are that First City's Amendment No. 3 to its Schedule 13D Statement disclosed that First City intended to increase its holding to 10% and that First City did so. K & B characterizes the disclosure in Amendment No. 3 as "a continuing invitation to holders of K & B stock to sell such stock to defendant First City." Complaint, paragraph 24.

The complaint also alleges "a systematic course of negotiated purchases of blocks of K & B stock . . . ." Complaint, paragraph 22. In support of this allegation, K & B has submitted an affidavit of its attorney, who attests that he was advised by an unspecified source that a certain broker was told by a representative of defendants' broker that defendants' broker requested blocks of K & B stock larger than 50,000 shares. That affidavit also recites that Mr. Eli Broad, Chairman of the Board of K & B, was advised that a broker had negotiated the sale of a block of approximately 493,000 shares of K & B stock to First City.

Defendants argue that even if these additional hearsay allegations are deemed incorporated into the complaint, the complaint falls far short of factually alleging a tender offer by First City. I agree.

While the concept of a "tender offer" is not defined in the 1934 Act,

"the characteristics of a typical offer are well-recognized. They are described in the House Report of the Committee on Interstate and Foreign Commerce, which held hearings on the proposed Act.

"The offer normally consists of a bid by an individual or group to buy shares of a company—usually at a price above the current market price. Those accepting the offer are said to tender their stock for purchase. The person making the offer obligates himself to purchase all or a specified portion of the tendered shares if certain specified conditions are met.

"H.R.Rep.No.1711, 90th Congress, 2d Sess., reprinted in [1968] U.S.Code Cong. & Admin.News, pp. 2811, 2811 [sic]."

*Kennecott Copper Corp. v. Curtiss-Wright Corp.*, 584 F.2d 1195, 1206 (2d Cir. 1978). The SEC has suggested eight elements as being characteristic of a tender offer:

"(1) active and widespread solicitation of public shareholders for the shares of an issuer; (2) solicitation made for a substantial percentage of the issuer's stock; (3) offer to purchase made at a premium over the prevailing market price; (4) terms of the offer are firm rather than negotiable; (5) offer contingent on the tender of a fixed number of shares, often subject to a fixed maximum number to be purchased; (6) offer open only a limited period of his stock . . .

"whether the public announcements of a purchasing program concerning the target company precede or accompany rapid accumulation of large amounts of the target company's securities."

*Wellman v. Dickinson*, 475 F.Supp. 783 (S.D.N.Y.1979).

■ Not a single one of these characteristics has been alleged here. There are no allegations of active and widespread solicitation of K & B shareholders, solicitations for a substantial percentage of K & B stock, an offer to purchase at a premium or on any other fixed terms, a contingency of a specified number of shares, a time limitation on any offer, pressure tactics or publicity campaigns. The only allegations are of (1) a disclosure by First City, as required by

the 1934 Act, of its intent to increase its holding from approximately 9% to approximately 10%, and (2) evidence that First City's holdings have been acquired, at least in part, by block purchases. Plainly these allegations do not even remotely resemble a tender offer scenario. Allegations of tender offers have been rejected in circumstances which more closely simulate the SEC profile than those alleged here. See, e. g., *Kennecott Copper Corp., supra; Stromfeld v. Great Atlantic & Pacific Tea Company, Inc.*, 484 F.Supp. 1264 (S.D.N.Y.1980); *Brascan Ltd. v. Edper Equities Ltd.*, 477 F.Supp. 773 (S.D.N.Y.1979). Here the complaint does not allege any offer in the sense of a proposal which, upon acceptance, becomes binding on the offeror. And it would seem obvious, as a matter of definition, that there can be no tender offer without an offer.

Defendants' motion to dismiss Count Three of the complaint is granted.

### 4. *Extraneous Defendants*

Defendants' final contention is that the complaint, aside from a conclusory allegation that each defendant is an agent of every other defendant, purports to state claims only against First City and upon which injunctive relief could be granted only against First City. Accordingly, defendants seek dismissal of the surviving portions of the complaint against all defendants other than First City. The motion is granted without prejudice to K & B's filing an amended complaint, within 60 days of the date of this Opinion and Order, separately setting forth the allegations against and relief sought from any defendant other than First City. The scope of K & B's leave to amend its complaint is limited to the involvement, if any, of any defendants with regard to those claims set forth in the original complaint which have survived the instant motion to dismiss.

### CONCLUSION

Defendants' motion to dismiss is (1) granted in part and denied in part, as specified above, as to Count One of the complaint, (2) granted as to Count Two of the complaint, and (3) granted as to Count Three of the complaint. The motion of defendants other than First City to dismiss the surviving portion of Count One of the complaint is granted without prejudice to the filing of an amended complaint by K & B as specified above.

SO ORDERED.