CONDEC CORPORATION, Plaintiff,

v.

William F. FARLEY, Farley Metals, Inc. Employee Benefit Master Trust, Farley Metals, Inc., Farley Industries, Inc., John F. Farley, William H. Vrba, and the Northern Trust Company, Defendants.

No. 83 CIV 6932 (LBS).

United States District Court, S.D. New York.

Oct. 21, 1983.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for plaintiff; Allen Kezsbom, Ira S. Sacks, Karen E. Katzman, New York City, of counsel.

Katten, Muchin, Zavis, Pearl & Galler, Donald E. Egan and Lee Ann Watson, Chicago, Ill., Cleary, Gottlieb, Steen & Hamilton, New York City, for defendants except The Northern Trust Co.; Edwin B. Mishkin, Judith A. Ripps, Neil P. Forrest, New York City, of counsel.

Sonnenschein, Carlin, Nath & Rosenthal, Chicago, Ill., Friedman & Gass, New York City, for defendant The Northern Trust Co.; Harold C. Hirshman, Roger Siske, Chicago, Ill., and Peter Wang, Neal Brickman, New York City, of counsel.

## OPINION

SAND, District Judge.

Plaintiff Condec, a corporation whose shares are traded on the American Stock Exchange, moves for a preliminary injunction against defendant William Farley and other named defendants claimed to be under his control based on alleged violations of Sections 13(d), 14(d), and 14(e) of the Securities Exchange Act, 15 U.S.C. §§ 78m(d), 78n(d), and 78n(e).[1] Plaintiff requests, *inter alia*, various corrective disclosures, a ban on future purchases of Condec by defendants, and "sterilization," for the purposes of an upcoming proxy contest, of the shares defendants have already acquired. Defendant The Northern Trust Company, by way of interpleader, requests a limitation of its liability with respect to its purchases of Condec stock in its capacity as trustee for defendant Employee Benefit Master Trust ("Master Trust").

On October 12, 1983, this Court in the related action, 83 Civ. 7223 (LBS), denied with leave to renew by October 17, 1983 Condec's application for a temporary restraining order and preliminary injunction, against these defendants, based on alleged violations of New York's Takeover Disclosure Act, N.Y.Bus.Corp. §§ 1600–14 (McKinney 1982 Supp.). That opinion, familiarity with which is assumed, details the relationship between the state and federal bases of plaintiff's applications for injunctive relief. Plaintiff has not renewed its application for injunctive relief predicated on state law grounds.

Plaintiff's basic contentions are that William Farley determined to seek control of Condec, that this determination was made prior to any acquisition of Condec stock, that Farley's plan was furthered by stock purchases which he caused employee benefit plans to make in breach of fiduciary obligations owed to the beneficiaries of such plans and that all of the foregoing was omitted or inadequately disclosed in defendants' filings under 15 U.S.C. § 78m(d).

Plaintiff's allegations center on purchases of Condec stock made by William Farley personally and by the Master Trust, which funds and manages the assets of the ERISA plans of Farley Metals, Inc., a corporation wholly owned by defendant William Farley. Pursuant to an arrangement with defendant The Northern Trust Company, the trustees of the Master Trust, William Farley and defendant William Vrba, Vice-President of Farley Industries, have the authority to make investment decisions regarding securities and other property held by the Master Trust. It is not disputed that, beginning in March of 1983, defendants Farley and Vrba used this authority to cause the Master Trust to purchase a substantial amount of Condec common stock. Farley explained to Vrba, "I want to buy 4.8% of Condec through various of our pension fund accounts." *See* deposition of William Farley (quoted at Plaintiff's Memorandum of Law, page 8). Plaintiff contends that this statement illustrates Farley's intent "to obtain a foothold in Condec of slightly under 5% from which he could launch an effort to control Condec while avoiding the disclosure requirements of Section 13(d)." Plaintiff's Memorandum at pp. 7–8. Defendants dispute this characterization, claiming that the 4.8% figure correlates with a planned three million dollar initial investment in Condec. (Three million dollars would have purchased ap-

---

1. For the purposes of this application, plaintiff appears to have dropped its claim based on § 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j. The claim was not pressed at oral argument on this motion, and is mentioned only in one sentence of the approximately 150 pages of written argument submitted by plaintiff. *See* Memorandum of Law of Condec at page 72, n. 17 (stating merely "such conduct constitutes an actionable 10(b)(5) violation as well"). See also Transcript, Oral Argument, October 17, 1983 ("Tr.").

proximately 4.8% of Condec at the time Farley made the above quoted statement.) Defendants' position is supported by the fact that the Master Trust's stock purchases stopped in July, 1983, well before the 4.8% figure was reached, but at about the time its investment in Condec stock amounted to three million dollars. Currently the Master Trust owns approximately 3.8% of Condec's common stock, acquired at a cost of $3,052,518. The Condec stock purchases represent the only common stock investments ever made by the Master Trust; the stock holdings account for between seven and nine percent of the Master Trust's investment portfolio.

In addition to directing purchases of Condec's common stock for the Master Trust, Farley also made personal investments in Condec. According to defendants, 95% of Farley's personal purchases occurred after July 25, 1983, the date of the Master Trust's final purchase of Condec stock. Even during the period when Farley and the Master Trust were both purchasing Condec, defendants claim, Farley carefully timed his purchases to avoid competing with the Master Trust for the same blocks of Condec stock.

By September 7, 1983, the Condec stock owned by the Master Trust and by Farley personally comprised in excess of five percent of Condec's outstanding shares, triggering a Schedule 13D filing, under 15 U.S.C. § 78m(d). The filing took place on September 16th. By this time, Farley held 167,900 shares of Condec stock (3.9% of shares outstanding); and the Master Trust held 162,500 shares (3.8%), over which Farley and Vrba had dispositive and voting powers. The Schedule 13D stated that Farley's personal holdings were acquired with the *purpose of* "investment," but there was currently a possibility that he would seek a position or positions on Condec's Board of Directors and/or Control of Condec, through means of open market or privately negotiated purchases, tender offer, merger, a going private leveraged buy out, "or otherwise." The Schedule 13D further stated that the Master Trust's purchases were made with an "investment" purpose.

A first amended Schedule 13D was filed on September 28th to reflect additional personal purchases of Condec stock by Farley (his holdings had increased to 209,700 shares) and the fact that this lawsuit was commenced by plaintiffs. The amended 13D described in some detail plaintiff's allegations, and included, as an exhibit, a copy of plaintiff's complaint. The September 28th filing also revealed Farley's intentions with respect to his holdings in somewhat greater detail than the original filing:

> At present, Farley does not intend to purchase in excess of 200,000 additional Shares or to make a tender offer for Shares; but he is considering whether to seek a position or positions on the board of directors of the Company and the possibility of determining to seek control of the Company, by means of a proxy solicitation or otherwise, though he has at present not concluded whether to pursue such courses of action.

First Amended 13D, page 5.

On October 14, 1983, Farley filed a second amended 13D, which indicated that by that time he had decided to pursue a proxy solicitation:

> At present, Farley does not intend to purchase in excess of 189,500 additional Shares (including Shares purchased by FMI [Farley Metals, Inc.]) or to make a tender offer for Shares; but he has decided to seek election of himself and other persons to be nominated by him to the board of directors of the Company at its forthcoming annual meeting of shareholders to be held on November 16, 1983 ("Meeting") and to solicit proxies for that purpose. It is Farley's understanding that five of eleven directors will be elected at the Meeting.

Second Amended 13D, page 8.

At the time of this filing, Farley held 214,700 Condec shares individually; the Master Trust held 162,500 shares; and Farley Metals, Inc. 5,500. Farley, thus, had sole or shared dispositive and voting powers over 382,700 shares of Condec, repre-

senting approximately nine percent of Condec's outstanding shares.

Plaintiff's claims focus in the main on alleged misstatements and omissions contained in the 13D filings. The allegations are numerous and described in depth in extensive memoranda submitted by plaintiffs. Plaintiff principally charges that the original 13D and the amendments fail to disclose (1) that Farley had a fixed intent, dating from the time of the earliest Condec purchases, to obtain control of Condec, (2) that Farley and Vrba breached their fiduciary duties to the Master Trust by directing its purchases of Condec stock, (3) that Northern Trust's resignation as trustee related to the alleged breach of fiduciary duties, (4) that Farley financed his own purchases of Condec with allegedly improper loans from Farley Metals, Inc., (5) that Farley, upon achieving control, planned to sell a sizeable portion of Condec's assets, (6) that Farley misrepresented discussions between himself and Norman Schafler, Condec's Chairman and founder.

Plaintiff further claims that defendants are engaged or have engaged in a secret "creeping" tender offer for Condec stock in violating of the filing requirements of Section 14 of the Exchange Act. Defendants dispute each of these allegations.[2]

At oral argument on this application, we solicited counsel's views on whether an evidentiary hearing would be appropriate. Toward the end of his argument, plaintiff's counsel requested a hearing, indicating his desire to put William Farley and William Vrba on the stand. Defendants oppose such a hearing, noting that plaintiff's request was belated and that the 570 pages of transcripts resulting from expedited depositions of Farley and Vrba provided a sufficient basis for the Court to rule on this application.

Our decision set forth below rests on our finding that plaintiff has failed to make the requisite showing of threatened irreparable injury. Even assuming *arguendo* that a hearing would elicit testimony wholly supportive of plaintiff's contentions, it would not in any way modify the disposition outlined below. The hearing would speak only to the merits of plaintiff's contentions as to Farley's intentions, and not at all to whether plaintiff has made the threshold showing of irreparable injury.

### Discussion

It is well-established that to obtain preliminary injunctive relief, the moving party must demonstrate (a) irreparable harm and (b) either (1) likelihood of success on the merits, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor. *See, e.g., Bell & Howell v. Masel Supply Co.,* 719 F.2d 42, 45 (2d Cir.1983); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979). As a threshold matter, the Court must be satisfied with the movant's showing of irreparable injury. *See Jackson Dairy, Inc., supra,* 596 F.2d at 72 (vacating preliminary injunction for failure to demonstrate irreparable injury); *Trane Co. v. O'Connor Securities,* 561 F.Supp. 301, 310 (S.D.N.Y.1983), *appeal dismissed as moot,* 718 F.2d 26 (2d Cir. 1983) ("[w]hile there are two alternative bases in this circuit for grant of preliminary injunctive relief ... in either case the failure to show irreparable harm is fatal."). As noted in our previous opinion, inadequacy of a monetary award is the touchstone of irreparable injury. *See Condec Corp. v. Farley,* No. 83 Civ. 7223 (LBS), slip op. at n. 2, (October 12, 1983) (citing *Jackson Dairy). See also Rondeau v. Mosinee Paper Corp.,* 422 U.S. 49, 60, 95 S.Ct. 2069, 2076, 45 L.Ed.2d 12 (1975).

---

**2.** Defendant's memorandum of law suggests that Farley's plans, on October 14th, went beyond mere proxy solicitation to the end of placing five of Farley's candidates on the eleven person board of Condec, but rather, included a decision to "seek control" of Condec. See Memorandum in Opposition at page 47. Whether this statement is mere "lawyers' error," as characterized by counsel, Tr. p. 40, or an accurate description of Farley's plans is unimportant to our resolution of this application.

We conclude that plaintiff has failed to demonstrate irreparable injury because we find that the 13D filings made by the defendants subsequent to the initiation of this action appear to adequately set forth the relevant facts and information which a Section 13D filing is intended to afford stockholders and the marketplace in general, and that, if the contrary should be established after a full trial on the merits, the Court will then have ample opportunity to grant effective relief.

■ As was made quite evident at oral argument, what plaintiff now seeks by way of a court mandated corrective revision to the 13D filings is not a further factual disclosure by defendants but rather a "confession of judgment," *i.e.,* an admission that an intent to seek control antedated any of defendants' stock purchases and that a breach of fiduciary responsibilities to beneficiaries of the Master Trust, in fact, occurred. Moreover, it is also evident that the underlying basis for plaintiff's request relates primarily to the proxy fight which lies ahead, that is, the suitability of Farley and his group to serve as directors of Condec. But we are mindful of the fact that before the stockholders of Condec will be called upon to exercise their proxies, they will have the benefit of all of the disclosures which the securities laws require in such proceedings. Further, in determining that the extraordinary remedy of preliminary injunctive relief is not now appropriate, we recognize the ability of a court of equity, after a full trial on the merits and even after the proxy election has been conducted, to fashion adequate forms of relief to rectify any violations proven by plaintiff. *Cf. GAF Corp. v. Heyman,* [1982–83

Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 99,237 (S.D.N.Y.1983) (appeal pending).

Central to our holding is the fact that we believe the additional information which would be furnished by the requested "corrective disclosures" would add little to the fund of information available to the stockholders and marketplace, but, at the same time, would have serious collateral consequences for the defendants because such disclosures would be tantamount to an admission of liability for ERISA and securities law violations. Moreover, the question whether such violations have in fact occurred is one not easily answered and in any event is not one appropriately to be determined by this Court in this proceeding. This is not simply a case where defendants have failed to file a Schedule 13D or have failed to indicate in their filings that serious questions have been raised about the propriety of their stock purchases and about the adequacy of their prior 13D filings.[3] Rather, the net consequence of the filings in fact made, which include a full recitation of the issues raised by plaintiff in this litigation, is that all interested parties now have access to all of the facts.

We find the reasoning of the court in *Avnet, Inc. v. Scope Industries,* 499 F.Supp. 1121 (S.D.N.Y.1980) fully apposite here. In *Avnet,* plaintiff corporation sought a preliminary injunction under Section 13(d) of the Exchange Act requiring defendants to state in their Schedule 13D that, *inter alia,* corporate defendant Scope was an "unregistered investment company," a fact about which, Judge Lasker stated, "serious questions exist." 499 F.Supp. at 1124. The court, on defendants' motion

---

**3.** While plaintiff claims that "it is beyond dispute that any change in corporate management which is effected by unlawful means causes irreparable harm to stockholders," Reply Memorandum at 58, we believe that the teaching of *Rondeau* is to the contrary. Cases finding irreparable injury have generally involved egregious instances of nondisclosure, where it could fairly be said that for appreciable periods of time an entire marketplace was trading wholly unpossessed of the information Section 13(d) was designed to convey. *See, e.g., Hanna Mining Co. v. Norcen Energy Resources, Ltd.,* 574 F.Supp.

1172 [1982 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 98,878 (N.D.Ohio 1982); *General Steel Industries, Inc. v. Walco National Corp.,* 527 F.Supp. 305 [1981–82 Transfer Binder] Fed.Sec. L.Rep. (CCH) ¶ 98,402 (E.D.Mo.1981). Cf. *Jackson Dairy, Inc. v. Hood,* 596 F.2d 70, 74 (2d Cir.1979) (Mansfield, J., concurring) (discussing relationship between irreparable injury and likelihood of success on merits).

As our opinion indicates, we do not believe the alleged nondisclosure approaches this magnitude.

to dismiss, dismissed the portion of plaintiff's claim relying on Section 13(d), declaring,

> When, as here, the record demonstrates that there is a dispute as to the facts, the law requires only that the disputed facts and the possible outcomes be disclosed. This is the limit of the law unless there is reason to believe that the facts are not genuinely in dispute. In the case at hand, there is no reason to believe that they are not genuinely in dispute.

*Id.* at 1125–26 (footnote omitted). Questions regarding the lawfulness of the purchase of Condec stock by the Master Trust concern genuinely disputed facts and issues.[4] Condec is of course not an appropriate spokesman for the beneficiaries of the Master Trust.[5] Condec's sole right is to ensure that the stockholders have truthful and complete information. We find that stockholders now have adequate information vis-a-vis Section 13(d). The adequacy of disclosures for purposes of proxy solicitations or the outcome of the ongoing ERISA investigations are not now before the Court.

Condec's real complaint relates to the "uncertainty" generated by the defendants' actions. But the annual meeting is now scheduled for November 16, 1983, less than one month away and so the period of alleged uncertainty is relatively circumscribed. In any event, such uncertainty clearly does not constitute irreparable harm under the Williams Act.

> The concern of management, the anxiety of the franchisees, and the confusion of employees and shareholders all result from the large position ... secured in [plaintiff's] stock. These problems all relate to the possibility of a change in management. However, the federal se-

curities laws were never intended to shield management from ouster or to prevent a power struggle by a group of shareholders for control. *Rondeau v. Mosinee Paper, supra,* 422 U.S. at 58, 95 S.Ct. at 2075.

*Trane Co. v. O'Connor Securities,* 561 F.Supp. 301, 309–311 (S.D.N.Y.1983), *appeal dismissed as moot,* 718 F.2d 26 (2d Cir.1983). *See also Dan River, Inc. v. Icahn,* 701 F.2d 278, 287 (4th Cir.1983) ("[T]he thrust of disclosure laws is to protect shareholders, not management. Management's right of action under the Williams Act is primarily in the interest of ... stockholders to ensure 'truthful and complete' information."); *Treadway Companies, Inc. v. Care Corp.,* 638 F.2d 357, 380 (2d Cir.1980).

Since the annual meeting is currently scheduled for mid-November, enjoining share purchases, voting, or "attempt[s] to exercise, directly or indirectly, any influence upon the management of Condec," Plaintiff's Memorandum at 94, may insulate Condec's management from challenge for a year and jeopardize defendants' plans and investments. Recognizing that delay is often management's "most potent weapon," *Edgar v. Mite Corp.,* 457 U.S. 624, 102 S.Ct. 2629, 2638 n. 12, 73 L.Ed.2d 269 (1982), and that the framers of the Williams Act did not intend to so arm management, *see Rondeau v. Mosinee,* 422 U.S. 49, 58–59, 95 S.Ct. 2069, 2075–2076, 45 L.Ed.2d 12 (1975), it is our strong belief that returning this struggle from the courtroom to the marketplace and annual meeting will not irreparably harm the parties or the investing public.

■ While most of our discussion of irreparable harm is directed to the allegations under Section 13(d), it applies with equal—if not greater—force to the alleged

---

**4.** Plaintiff attempts to distinguish this case from *Avnet* by claiming that the admissions or disclosures plaintiff requests involve no legal conclusions. We find the distinction unconvincing. Admissions of the magnitude plaintiff requests would lead to the inevitable "legal conclusion" that defendants wilfully violated federal securities law and ERISA. *See, e.g.,* Tr. 21–22.

**5.** The Department of Labor, which is an appropriate spokesman for such beneficiaries, has initiated an investigation of the Master Trust's Condec stock purchases. *See infra* p. 1388.

violations of Section 14. Plaintiff, at oral argument and in its memoranda, does not advance any claims of injury peculiar to Section 14. Indeed, a fair reading of plaintiff's reply memorandum would suggest that, in light of defendants' current disclaimer regarding a tender offer, plaintiff has confined its claims under Section 14 to a period within the month of September. *See Reply Memorandum* at pages 45–48. To the extent that plaintiff alleges continuing injury under Section 14, we note that those who tender their shares in connection with what plaintiff describes as a "tender offer" would constitute a finite group of investors, with brokers' receipts, for whom money damages would be fully compensatory.

### Application of The Northern Trust Company

Northern Trust seeks, by way of interpleader, a determination that it is free from liability arising by virtue of its capacity as trustee and nominal title holder of the Condec stock acquired by the Master Trust. Its position is that it has no responsibility for the Condec stock purchases since the investment decisions rest with defendants Farley and Vrba. However, as we indicated at oral argument, it would be inappropriate for this Court, in the present state of the record and without the appearance before it of any authorized representative of the beneficiaries of the Master Trust (other than Farley and Vrba, who would hardly qualify as disinterested representatives of the beneficiaries), to reach any determinations concerning the potential liability of Northern Trust. We defer any further action with respect to Northern Trust's application pending completion of the Department of Labor investigation into possible ERISA violations which has been initiated, apparently at Northern Trust's request. We emphasize, however, that our reservation of jurisdiction over this claim in no way relieves any or all of those having ongoing fiduciary responsibility to the ben-

eficiaries of the Master Trust with respect to the retention or disposition of the Condec stock from continuing to exercise such fiduciary responsibilities pursuant to the obligations imposed by law.

For the foregoing reasons, plaintiff's application for a preliminary injunction is denied.[6]

SO ORDERED.

---

6. In reaching our decision, we have taken into account plaintiff's letter of October 20, 1983, allegedly providing additional support for the application.