Morris S. WEEDEN, Parker H. Petit, J. Terry Dewberry, William J. Gresham, Jr., Brian D. Hogg, W. Scott James, M.D., Alexander H. Lorch, J. Paul Yokubinas and Healthdyne, Inc., Plaintiffs–Counterclaim Defendants,

v.

CONTINENTAL HEALTH AFFILIATES, INC. and CH Acquisition Corporation, Defendants–Counterclaimants.

No. 1:88–CV–2032–RHH.

United States District Court, N.D. Georgia, Atlanta Division.

Feb. 15, 1989.

J. Kirk Quillian, Troutman, Sanders Lockerman & Ashmore, Atlanta, Ga., for plaintiffs-counterclaim defendants.

Jack H. Watson, Jr., Jan James Johnson, Long Aldridge & Norman, Atlanta, Ga., James B. Weidner, David A. Schulz, Rogers & Wells, New York City, for defendants-counterclaimants.

## ORDER

ROBERT H. HALL, District Judge.

Plaintiff Healthdyne, Inc. ("Healthdyne") brings this action for equitable relief (1) requiring Continental Health Affiliates, Inc. and CH Acquisition Corporation (collectively, "Continental") to correct the allegedly materially false and misleading

Schedule 13D that was filed with respect to Continental's proposal to purchase all outstanding shares of Healthdyne common stock at $6.00 per share; (2) requiring defendants to comply with Rule 14d–2, 17 C.F.R. § 240.14d–2 (the "Five Day Rule"); and (3) to insure that Healthdyne's shareholders are afforded the rights granted them under the laws of Georgia. This court has jurisdiction pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa; 28 U.S.C. §§ 1331, 1332(a), 1337 and 1343; and the principles of ancillary and pendent jurisdiction. Currently before the court is defendants' Motion for Judgment on the Pleadings Dismissing Counts One and Two of Plaintiffs' First Amended Complaint.[1] For the reasons stated below, the court GRANTS defendants' Motion for Judgment on the Pleadings and DISMISSES Counts One and Two of the First Amended Complaint.

FACTS

Healthdyne is a Georgia corporation with its principal place of business and executive offices at 1850 Parkway Place, Marietta, Georgia.

Healthdyne provides a diversified line of home health care services and medical products. Healthdyne's services consist primarily of in-home health care support, such as infusion therapy and perinatal monitoring.

Healthdyne's common stock is registered pursuant to Section 12 of the Securities Act of 1933, 15 U.S.C. § 77*l*. Healthdyne's common stock is publicly traded in the over-the-counter market and is quoted through the National Association of Securities Dealers Automated Quotations System.

Defendant Continental Health Affiliates, Inc. is a Delaware corporation with its principal place of business and executive offices at 900 Sylvan Avenue, Englewood Cliffs, New Jersey. It is engaged in the operation of Nursing homes; it also provides a variety of non-hospital based health care products including infusion therapy.

Defendant CH Acquisition Corporation, a Delaware corporation formed May 2, 1988 for the purpose of acquiring Healthdyne common stock, is a wholly-owned subsidiary of Continental Health Affiliates. CH Acquisition has its principal place of business at 900 Sylvan Avenue, Englewood Cliffs, New Jersey.

On September 6, 1988, Continental Chair and Chief Executive Officer, Jack Rosen, sent a letter to the Board of Directors of Healthdyne. In the letter, Continental offered to acquire Healthdyne through a merger or similar negotiated transaction, in which $6.00 would be paid for each outstanding share of Healthdyne common stock.

On September 7, 1988, Jack Rosen, issued a press release which restated the terms of the September 6, 1988 letter to Healthdyne's Board of Directors. Both the letter and the press release stated that the offer was not contingent on financing or further review of Healthdyne's business.

On September 7, 1988, Continental filed a Schedule 13D disclosing that it had purchased 6.9% of Healthdyne common stock and that it intended to acquire control of the company by acquiring all outstanding stock.

On September 13, 1988, Healthdyne commenced this action.

---

**1.** Also before the court is plaintiffs' Motion for Leave to File a Sur–Reply to defendants' Motion for Judgment on the Pleadings. The plaintiffs argue that the court should grant leave to file a sur-reply since defendants made new arguments in their Reply Memorandum which plaintiffs should have the opportunity to address. After reading defendants' Reply Memorandum, the court finds that no new arguments were presented such that the filing of a sur-reply is justified. In defendants' initial Motion for Judgment on the Pleadings, defendants argued both that the initial Schedule 13D was not false or misleading *and* that even if it were false and misleading, the amendment to the Schedule 13D cured the original filing. Motion for Judgment on the Pleading, p. 9. The plaintiffs are simply incorrect in their assertion that defendants have now abandoned their initial "mootness" argument in order to argue that the original Schedule 13D was not misleading. Plaintiffs' Motion for Leave to File a Sur–Reply is therefore DENIED.

DISCUSSION

Pursuant to Fed.R.Civ.P. 12(c), defendants move for a judgment on the pleadings, dismissing Counts One and Two of the First Amended Complaint. Count One alleges that defendants filed a materially false and misleading Schedule 13D. Count Two alleges that defendant violated the "Five Day Rule," Rule 14d–2, 17 C.F.R. § 14d–2.

A motion for judgment on the pleadings provides a means of disposing of cases when the material facts are not in dispute. The motion only has utility when all material allegations of fact are admitted in the pleadings and only questions of law remain. 5 C. Wright & A. Miller, Federal Practice and Procedure § 1367, at 685 (1969). For purposes of a motion for judgment on the pleadings by a defendant, the fact allegations of the complaint are taken as true. *Logan v. Warren County Board of Education*, 549 F.Supp. 145 (S.D.Ga. 1982). A judgment on the pleadings should not be granted if questions of fact remain to be decided. *Id.*

### I. *Count One: Violations of Section 13(d)*

Count One of the First Amended Complaint alleges that defendants violated Section 13(d) of the Securities Exchange Act by filing a materially false Schedule 13D. For purposes of a Fed.R.Civ.P. 12(c), the court must assume that the factual allegations of the Complaint are true. Thus, the court assumes that defendants filed a Schedule 13D that:

(a) falsely states that the offer to acquire Healthdyne is not conditioned on obtaining financing;

(b) fails to disclose that Continental cannot effect the merger it contemplates absent the consent of a third party which holds all the shares of a separate class of Healthdyne securities;

(c) falsely states the $93 million is sufficient to consummate the merger contemplated; and

(d) fails to disclose that its financing and the offer are subject to several material conditions.

First Amended Complaint ¶ 40.

Defendants maintain that a judgment on the pleadings in their favor must be entered because defendants corrected the original Schedule 13D by filing an amended Schedule 13D. Defendants contend that the amended Schedule 13D "attaches plaintiff's Complaint *in toto* as an exhibit, thereby fully disclosing all the relevant facts and information that plaintiffs allege should have been disclosed in the (original) Schedule 13D." Thus, defendants argue that, as matter of law, Count I of the Complaint is now moot.

Plaintiffs acknowledge that where an amended Schedule 13D "cures" the defects of an original filing, then a claim for violation of § 13(d) is moot. However, plaintiffs maintain that defendants' amended Schedule 13D did not satisfactorily cure the material misrepresentations or omissions in the original Schedule 13D. Plaintiffs argue that the defendants' amended Schedule 13D merely disclosed the existence of a dispute concerning facts alleged in the original schedule. In order to cure the original Schedule, plaintiffs maintain that defendants would have to disclose the facts themselves, not merely the existence of a dispute concerning the facts.

The court, therefore, must determine whether the amended Schedule 13D satisfactorily "cured" the original 13D. To make this determination the court must examine both the policy concerns of the Williams Act and the pertinent case law on the subject of Schedule 13D disclosures.

Section 13(d) of the Exchange Act was enacted as part of the Williams Act of 1968. The Williams Act amended the Exchange Act "to provide for full disclosure in connection with cash tender offers and other techniques for accumulating large blocks of equity securities of publicly held companies." S.Rep. No. 550, 90th Cong., 1st Sess. 4; H.R.Rep. No. 1711, 90th Cong., 2d Sess. 4 (1968); *reported in* U.S.Code Cong. & Admin. News p.p. 2811, 2814. The specific purpose of Section 13(d) was "to

alert the marketplace to every large, rapid aggregation or accumulation of securities ... which might represent a potential shift in corporate control." *G.A.F. Corporation v. Milstein,* 453 F.2d 709, 717 (2d Cir.1971), *cert. denied,* 406 U.S. 910, 92 S.Ct. 1610, 31 L.Ed.2d 821 (1972).

> Section 13(d) provides in pertinent part: (a)ny person who, after acquiring directly of indirectly the beneficial ownership of any (specific) equity security ... is the beneficial owner of more than 5 per centum of such class (of security) shall, within ten days after such acquisition, send to the issuer of the security ..., send to each exchange where the security is traded, and file with the Commission, a statement....

The statement must, in turn, contain information required under the regulations of the Securities and Exchange Commission. *See* 17 C.F.R. 240.13d–101.[2]

Plaintiffs argue that the original Schedule 13D violated the provisions of Section 13(d) and 17 C.F.R. 240.13d–101.1 in failing to disclose the alleged contingency of defendants' acquisition of Healthdyne. Defendants contend, however, that the attachment of the Complaint to the Amended Schedule 13D cures the problem. The court finds that the net effect of the amendment to the original Schedule 13D was to disclose the *possibility* that Continental's offer was contingent on obtaining financing.

The Eleventh Circuit has not had the opportunity to directly address the question of whether disclosing the possibility that an offer might be contingent is sufficient for Section 13(d) disclosure regulations. However, case law from other jurisdictions proves helpful in resolving this question.

In *Avnet v. Scope Industries,* 499 F.Supp. 1121 (S.D.N.Y.1980), the court held that where there was a genuine dispute as to whether the defendants were an investment company, though not registered as one, amendment of the original Schedule 13D to disclose the allegations with respect to investment company status was sufficient. The defendants were not required to admit the truth of the assertions made by plaintiffs; they were merely required to acknowledge the disagreement regarding the status of the company.

In the case at hand, defendants similarly argue that all that they must do to satisfy Schedule 13D requirements is disclose the existence of a dispute over the strength of Continental's financial backing. Plaintiffs argue, however, that the facts of the case at hand distinguish it from *Avnet,* 499 F.Supp. at 1121. Plaintiffs contend that *Avnet* applies only to disclosures concerning legal or statutory violations as opposed to factual violations. Thus, they maintain that only a failure to disclose a *legal* violation or illegal conduct can be cured by an amendment to the Schedule 13D disclosing a good faith dispute between the parties concerning the alleged violation of the law. The argument made by plaintiffs, distinguishing disclosure of factual as opposed to legal disputes, was presented to the United States District Court for the Southern District to New York (the same division that heard *Avnet* ) in *Condec Corp. v. Farley,* 573 F.Supp. 1382 (S.D.N.Y.1983). The *Condec* court adopted the *Avnet* principle that when the record demonstrates that there is a dispute as to the facts, the law requires only that the disputed facts and the possible outcomes be disclosed. The court also noted:

> Plaintiffs attempt to distinguish this case from *Avnet* by claiming that the admis-

---

2. The statement must include:
1. The identity of the security and its issuer.
2. The identity and background of the five percent owner.
3. The source and amount of funds or other consideration used to purchase or acquire the stock.
4. The purpose of the transaction, focusing on any intent to change the management, policies, structure or governance of the issuer.
5. The aggregate interest of the five percent owner in the issuer's stock, including power to vote or dispose of the stock.
6. Any contracts, arrangements understandings or relationships the five percent owner has with respect to the securities of the issuer.
7. Certain specified exhibits, including copies of agreements relating to the other items.

sions or disclosures plaintiff requests involve no legal conclusions. We find the distinction unconvincing. Admissions of the magnitude plaintiff requests would lead to the inevitable "legal conclusion" that defendants willfully violated federal securities law ...

*Condec,* 573 F.Supp. at 1387, n. 4.

This court does not find support for the legal/factual distinction drawn by plaintiffs in the pertinent case law.[3] Furthermore, the court finds that the disclosure requirements at the root of Section 13(d) were fully satisfied when defendants attached an amendment to the original Schedule 13D, thereby revealing that the parties disputed the sufficiency of Continental's financing arrangements.

Accordingly, Count One of the First Amended Complaint is DISMISSED.

## II. *Count Two: Violations of Rule 14d–2*

■ Defendants have also moved to dismiss Count Two of the Amended Complaint. Count Two alleges that by filing its Schedule 13D and issuing an accompanying press release, Continental demonstrated an intent to commence a tender offer for all outstanding shares of Healthdyne common stock. Plaintiffs contend that "Continental's filing on September 7 of its Schedule 13D with the SEC, and its press release issued that same day constitute a 'public statement' or 'public announcement' within the meaning of Rule 14d–2(b)." Amended Complaint ¶ 45. Plaintiffs therefore argue that defendants violated the "Five Day Rule" promulgated by the SEC under Section 14(d).[4]

In their motion to dismiss, defendants contend that Continental never made or announced the commencement of a tender offer. Thus, defendants argue that the requirements of Rule 14d never became operative. Defendants read Rule 14d–2b as applying only to a press release made *with respect to a tender offer.* Defendants maintain that if the press release or announcement is not made *with respect to a tender offer,* the rule never comes into play. Defendants present a two-step analysis:

**3.** *Warner Communications, Inc. v. Murdoch,* 581 F.Supp. 1482 (D.Del.1984) does not stand for the proposition that an amendment to a Schedule 13D can only cure omissions or misstatements concerning legal or statutory violations or undisputed facts. Rather the case holds that a party's disclosure obligations "extend no further than good faith disclosure of all material information within the party's scope of knowledge." *Id.* at 1502. In the case at hand, Continental revealed its financing arrangements in its initial Schedule 13D filing. Then, in its Amendment, it revealed the fact that plaintiffs disputed the adequacy of the financing. Such disclosure met the *Warner* requirement of "good faith of all material information ..."

**4.** SEC Rule 14d–2b, 17 C.F.R. § 240.14d–2(b) (the "Five Day Rule") provides:

*Public Announcement.* A public announcement by a bidder through a press release, newspaper advertisement or public statement which includes the information in paragraph (c) of this section with respect to a tender offer in which the consideration consists solely of cash and/or securities exempt from registration under section 3 of the Securities Act of 1933 shall be deemed to constitute the commencement of a tender offer under paragraph (a)(5) of this section *except,* That such tender offer shall not be deemed to be first published or sent or given to security holders by the bidder under paragraph

(a)(5) of this section on the date of such public announcement if within five business days of such public announcement, the bidder either:

(1) Makes a subsequent public announcement stating that the bidder has determined not to continue with such tender offer, in which event paragraph (a)(5) of this section shall not apply to the initial public announcement; or

(2) Complies with Rule 14d–3(a) (§ 240.14d–3(a)) and contemporaneously disseminates the disclosure required by Rule 14d–6 (§ 240.14d–6) to security holders pursuant to Rule 14d–4 (§ 240.14d–4) or otherwise in which event:

(i) The date of commencement of such tender offer under paragraph (a) of this section will be determined by the date the information required by Rule 14d–6 is first published or sent or given to security holders pursuant to Rule 14d–4 or otherwise; and

(ii) Notwithstanding paragraph (b)(2)(i) Of this section, section 14(d)(7) of the Act shall be deemed to apply to such tender offer from the date of such public announcement.

Rule 14d–2(c), 17 C.F.R. § 240.14d–2(c) provides:

*Information.* The information referred to in paragraph (b) of this section is as follows:

(1) The identity of the bidder;

(2) The identity of the subject company; and

(3) The amount and class of securities being sought and the price or range of prices being offered therefor.

First, is a "tender offer" involved? If not, the Rule has no application. Second, assuming "a tender offer" is involved, did the announcement with respect to it commence that offer?

Defendants' Reply, p. 7.

Defendants base their Fed.R.Civ.P. 12(c) motion to dismiss on their contention that plaintiffs cannot demonstrate that defendants have made a tender offer such that Rule 14d comes into play.

Plaintiffs reject defendants' two-step analysis. Plaintiffs maintain that by making a public announcement containing the identity of the bidder, the identity of the target, and the amount and price of shares sought, defendants effectively made a tender offer. Plaintiffs essentially collapse steps one and two into a one step process whereby the public disclosure of the information listed in Rule 14d–2(c) itself constitutes the commencement of a tender offer.

Plaintiffs attempt to bolster their reading of Rule 14d–2(b) by referring to the *amicus* brief of the SEC filed in *American Carriers, Inc. v. Baytree Investors, Inc.*, No. 88–1533 (10th Cir. June 23, 1988), *on appeal from* 685 F.Supp. 800 (D.Kan.1988). In *American Carriers*, the defendants sent a letter to the target company "propos(ing) to acquire 51% of the outstanding shares of the company through a tender offer, subject to approval of the majority of (the) board of directors, at a price of $15 a share." 685 F.Supp. at 803.

Plaintiffs in the case argue that the SEC *amicus* brief supports the proposition:

> that a corporation which makes a public announcement of the material terms of an offer and indicates an intent to make a tender offer "is deemed to have commenced the offer, and thus must comply with the disclosure and other requirements of the Act and Rules." (SEC Brief, Ex. "A" at 2).

Plaintiffs' Response, p. 19.

However, what plaintiffs conveniently ignore in their argument is that defendants in *American Carriers* had expressly stated that they were proposing a tender offer. In its *amicus* brief the SEC explicitly stated:

The rule provides that a bidder who publicly announces the price and quantity terms "with respect to a tender offer," thereby commences its offer. *The defendants' letter expressly stated that they were proposing a tender offer.* Thus, the cases defendants rely on—in which courts were attempting to determine whether certain courses of conduct that were neither labelled tender offers nor resembled typical tender offers, were in fact tender offers—are not relevant here. *Defendants have obviated the need for any such inquiry by clearly stating that they were proposing a tender offer.* p. 13 (emphasis added).

In the case at hand, plaintiffs cannot avoid an inquiry into whether defendants' course of conduct constituted a tender offer simply by asserting that any public announcement of Rule 14d–2(c) terms constitutes a tender offer. The language of Rule 14d–2(b) is directly contrary to such a reading, requiring that the announcement be made "with respect to a tender offer." Furthermore, the SEC's *amicus* brief filed in *American Carriers* clearly does not support the reading given to it by the plaintiffs.

This court, therefore, must conduct an inquiry into whether the defendants' filing of the Schedule 13D and contemporaneous press release constituted a tender offer. If the court determines that defendants did not make a tender offer, then as a matter of law, defendants cannot be found to have violated the "Five Day Rule," and the motion to dismiss Count Two should be granted.

Neither Congress nor the SEC has expressly defined the term "tender offer." The Court of Appeals for the Fifth Circuit notes that the SEC has consistently refused to supply a definition since the dynamic nature of tender offers demands judicial flexibility in determining what types of acquisitions should be subject to the Act. *Pin v. Texaco*, 793 F.2d 1448, 1453 (5th Cir.1986).

Courts have fashioned several tests for determining whether a party's actions con-

stitute a tender offer for purposes of the Williams Act. A tender offer is "conventionally understood to be a publicly made invitation addressed to all shareholders of a corporation to tender their shares for sale at a specified price." Note, *The Developing Meaning of "Tender Offer" Under the Securities Exchange Act of 1934*, 86 Harv. L.Rev. 1250, 1251 (1973). The conventional tender offer usually remains open for a period of two weeks and is typically at a premium over market price. *Id.*

In the case at hand, there is clearly no *conventional* or *classical* tender offer at issue. Continental's offer came in the form of a letter to the Healthdyne Board of Directors. The letter reads as a proposal seeking negotiation with the Board rather than an open invitation to all shareholders. While the price of $6.00 per share was above market price, no fixed time limits were attached to the "offer." Thus, there was no pressure imposed on shareholders by the usual time constraints that accompany tender offers. The court finds that Continental's offer did not rise to the level of a conventional tender offer.

Since the passage of the Williams Act, several courts, apparently concerned that methods of acquisition representing deviations from the conventional tender offer but exerting a similarly deleterious effect on shareholders could be resorted to in circumvention of the regulatory process, formulated alternative tests of tender offers. For example, several courts have used the "Eight Factor Test." [5] *See, e.g., Hoover Company v. Fuqua Industries, Inc.,* (1979 Transfer Binder) Fed.Sec.L.Rep. (CCH) § 97, 107 1979 WL 1244 (N.D.Ohio 1979), *Wellman v. Dickinson,* 475 F.Supp. 783 (S.D.N.Y.1979), *aff'd,* 682 F.2d 355 (2d Cir.1982), *cert. denied,* 460 U.S. 1069, 103 S.Ct. 1522, 75 L.Ed.2d 946 (1983), *Brascan Ltd. v. Edper Equities Ltd.,* 477 F.Supp. 773 (S.D.N.Y.1979), *Zuckerman v. Franz,* 573 F.Supp. 351 (S.D.Fla.1983).

Under the Eight Factor Test, the court considers the following factors to deter-

mine whether a tender offer has been made:

(1) Active and widespread solicitation of public shareholders for the shares of an issuer;

(2) solicitation made for a substantial percentage of the issuer's stock;

(3) offer to purchase made at a premium over the prevailing market price;

(4) terms of the offer are firm rather than negotiable;

(5) offer contingent on the tender of a fixed number of shares, often subject to a fixed maximum number to be purchased;

(6) offer open only for a limited period of time;

(7) offeree subjected to pressure to sell his stock;

(8) public announcements of a purchasing program concerning the target company precede or accompany rapid accumulation of a large amount of target company's securities.

*Zuckerman,* 573 F.Supp. at 358.

In the case at hand, application of the Eight Factor Test demonstrates that Continental has not made a tender offer. Continental did not make an active or widespread solicitation of public shareholders for Healthdyne stock. Continental's letter to the Board of Directors of Healthdyne reads as an invitation for negotiation. The press release of September 7, 1988 merely restates the terms of the letter. The court does not find the letter and announcement together constitute active and widespread solicitation. The second characteristic is met here, in that Continental's proposal was for all outstanding shares of common stock. Similarly, the third prong was met in that the proposed price was $6.00 per share, a premium over the market price. However, the letter indicated that Continental was inviting negotiation. Thus, the terms of the offer were not firm and the fourth prong was not satisfied. Similarly,

---

**5.** Congress left the SEC with the task of providing concrete meaning to the term tender offer. The SEC has never articulated a precise test but has, on several occasions, provided courts with a list of seven or eight factors that its considers relevant to the determination of whether a given transaction constitutes a tender offer for Williams Act purposes.

the fifth, sixth and seventh prongs were also not met. The proposal did not set a specific time limit on the offer of $6.00 per share, nor was the proposal contingent on the tender of a fixed number of shares, Thus, shareholders were not pressured into making hasty decisions. Finally, there was no public announcement of a purchasing program followed by a rapid accumulation of Healthdyne stock. Applying the Eight Factor Test, the court finds that Continental's acquisition proposal did not constitute a tender offer for purposes of the Williams Act.

Still another judicial test was formulated in *Hanson Trust PLC v. SCM Corporation*, 774 F.2d 47 (2d Cir.1985). The *Hanson Trust* court warned against rigid application of the Eight Factor Test:

> although many of the ... factors are relevant for purposes of determining whether a given solicitation amounts to a tender offer, the elevation of such a list to a mandatory "litmus test" appears to be both unwise and unnecessary.

*Id.*, at 57.

The *Hanson Trust* court adopted instead a test it deemed more flexible than the Eight Factor Test:

> (T)he question of whether a solicitation constitutes a "tender offer" within the meaning of § 14(d) turns on whether, viewing the transaction in the light of the totality of circumstances, there appears to be a likelihood that unless the pre-acquisition filing strictures of that statute are followed there will be a substantial risk that solicitees will lack information needed to make a carefully considered appraisal of the proposal put before them.

*Id.*

Applying the *Hanson Trust* "totality of the circumstances" test as opposed to the Eight Factor Test to the case at hand does not change the outcome. The circumstances surrounding Continental's proposal do not indicate that shareholders lacked vital information concerning the proposed acquisition or that they were pressured into making hasty decisions regarding their stock.

The court finds, therefore, that Continental's proposal did not amount to a tender offer for Rule 14d purposes under any of the tests commonly employed to determine whether a given solicitation constitutes a tender offer. Accordingly, Count Two of the First Amended Complaint which alleges violations of the "Five Day Rule" is DISMISSED.

CONCLUSION

The court DENIES plaintiffs' Motion for Leave to File a Sur–Reply.

The court GRANTS defendants' Motion for Judgment on The Pleadings, and DISMISSES Counts One and Two of the First Amended Complaint. The issues remaining for trial are thus limited to Counts Three and Four of the First Amended Complaint.

SO ORDERED.